UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

NAVIGANT CONSULTING, INC., a Delaware    :
corporation,    :

             Plaintiff,    :   Case No. 07 CIV 4854

   :

   :   **ANSWER, AFFIRMATIVE**

     - against -    :   **DEFENSES, COUNTERCLAIMS**

   :

   :   **JURY TRIAL DEMANDED**

JESS VARUGHESE, an individual,    :

   :

   :

          Defendant.    :

------------------------------------------------------------------x

## ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND JURY DEMAND

Defendant and counterclaimant Jess Varughese ("Varughese") hereby answers the complaint of Navigant Consulting, Inc. ("Navigant") on personal knowledge with respect to his own acts and upon information and belief with respect to all others and asserts the affirmative defenses and counterclaims set forth herein as follows:

## SUMMARY OF THE COMPLAINT

1.     Denies the allegations contained in paragraph 1 of the complaint.

2.     Denies the allegations contained in paragraph 2 of the complaint.

3.     Denies the allegations contained in paragraph 3 of the complaint.

4.     Denies the allegations contained in paragraph 4 of the complaint and alleges that Varughese is not contractually obligated to repay Navigant his starting bonus or retention bonus, that the amount sought by Varughese in his counterclaims far exceed any amount claimed by Navigant herein and that Navigant's claims are barred by its own fraudulent activities and unclean hands.

5.      Denies that Navigant has any colorable claims against Varughese as alleged in paragraph 5 of the complaint except admits that Navigant purports to bring the claims described in this paragraph.

## THE PARTIES

6.      Admits the allegations in paragraph 6 of the complaint.

7.      Denies the allegations contained in paragraph 7 of the complaint except admits that Varughese is a citizen of the State of New York residing at 14 Bayberry Road, Armonk, New York within this judicial district, that he is a former employee of Navigant, former co-leader of Navigant's Financial Services Practice, the practice area leader of Navigant's GFI subpractice, and a former Managing Director of Navigant.

## JURISDICTION

8.      Admits that the Court has diversity jurisdiction.

9.      Admits that Navigant purports to allege jurisdiction under 18 U.S.C. § 1331, but denies that Navigant has stated a colorable claim against Varughese under the provisions of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, cited by Navigant in the complaint.

10.      Denies that Varughese committed even a single wrong in or directed in New York as alleged in paragraph 10 of the complaint except admits that the Court has personal jurisdiction over him.

11.      Admits that venue is proper in this Court and that Varughese signed an agreement with Navigant that provides for venue in any state or federal court of competent jurisdiction in or for Armonk, New York.

## FACTUAL ALLEGATIONS

### Navigant's Financial Services Practice

12.    Admits the allegations contained in paragraph 12 of the complaint.

### Navigant's GFI Subpractice

13.    Denies the allegations contained in paragraph 13 of the complaint except admits that the GFI subpractice provides financial, staffing and operations advisory services for its clients and that Navigant provides services to Deutsche Bank's New York office and elsewhere.

14.    Denies the allegations contained in paragraph 14 of the complaint except admits that Navigant's GFI subpractice provides staffing support in two main ways.

15.    Denies the allegations contained in paragraph 15 of the complaint and alleges that, in fulfilling additional temporary support needs, the first option for Varughese's team was always to fulfill these positions with the most qualified candidates who were both cost-effective and available for the duration of the engagement.

16.    Admits the allegations contained in paragraph 16 of the complaint.

17.    Denies the allegations contained in paragraph 17 of the complaint except admits that Navigant finds appropriate individuals to work in on-site positions within Deutsche Bank and that Navigant is responsible for billing for its services.

18.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of allegations concerning the number of consultants presently deployed on GFI projects at Navigant as alleged in paragraph 18 of the complaint, denies the remaining allegations contained in this paragraph, except admits that Varughese led the GFI subpractice, that Peter Bond was an Associate Director in the GFI subpractice and that Kostakis was one of four directors and two associate directors within the GFI subpractice.

## <u>Defendant's Employment with Navigant</u>

19.    Admits the allegations contained in paragraph 19 of the complaint, except denies that Varughese's sign-on bonus was subject to repayment if Varughese resigned within 36 months and alleges that there are additional employment terms not set forth in this paragraph.

20.    Denies the allegations contained in paragraph 20 of the complaint and alleges that the GFI subpractice, did not exist before Varughese joined Navigant, that Varughese was hired to build Navigant's presence in the capital market space and that Varughese built such a practice, which he named the GFI subpractice.

21.    Denies the allegations contained in paragraph 21 of the complaint.

22.    Admits the allegations contained in paragraph 22 of the complaint to the extent that they purport to describe Varughese's responsibilities as of January 2007 but not prior thereto.

23.    Denies the allegations contained in paragraph 23 of the complaint except admits that Varughese was asked to join the Business and Financial Operations Advisory Segment Committee, and alleges that Varughese did not attend a single management committee meeting.

24.    Denies the allegations contained in paragraph 24 of the complaint and alleges that, pursuant to Navigant's policies and express instructions, only the Managing Director and manager of record on a client contract had primary and direct responsibility for the work performed under the contract, including staffing decisions, that Deutsche Bank was managed by Sharon Siegel Voelzke ("Voelzke"), not Varughese, and that Varughese was expressly instructed by Navigant not to have direct responsibility for Deutsche Bank.

25.    Denies the allegations contained in paragraph 25 of the complaint, and alleges that, when staffing projects, Varughese's team would fill positions with the most qualified candidates who were both cost-effective and available for the duration of the engagement.

26.    Denies the allegations contained in paragraph 26 of the complaint.

27.    Denies the allegations contained in paragraph 27 of the complaint and alleges that pursuant to Navigant's express instructions Varughese was not permitted to have direct responsibility for Deutsche Bank and was not familiar with the day-to-day details of Navigant's relationship with this company.

## Certain of the Defendant's Fiduciary, Contractual and Other Duties

28.    The allegations contained in paragraph 28 call for a legal conclusion for which no response is required.

29.    Denies the allegations contained in paragraph 29 of the complaint.

30.    Denies the allegations contained in paragraph 30 of the complaint.

31.    Paragraph 31 of the complaint contains a characterization of a term of a Non-Solicitation Agreement.  Since this agreement speaks for itself, no response is required and Varughese refers the Court to the Non-Solicitation Agreement for the true and accurate terms and conditions thereof.

32.    Paragraph 32 purports to contain excerpts of a Non-Solicitation Agreement.  Since the agreement speaks for itself, no response is required and Varughese respectfully refers the Court to the Non-Solicitation Agreement for the true and accurate terms and conditions thereof.

33.    Varughese admits that he signed a Certificate of Receipt as referenced in paragraph 33 of the complaint.  The remaining allegations of this paragraph purport to be

an excerpt of a provision from Navigant's Employee Handbook. Since the Employee Handbook speaks for itself, no response is required and Varughese respectfully refers the Court to the Employee Handbook for the true and accurate terms and conditions thereof.

34.    Paragraph 34 contains characterizations of certain terms of an Employee Handbook. Since the Employee Handbook speaks for itself, no response is required and Varughese respectfully refers the Court to the Employee Handbook for the true and accurate terms and conditions thereof.

35.    Paragraph 35 contains characterizations of certain terms of an Employee Handbook. Since the Employee Handbook speaks for itself, no response is required and Varughese respectfully refers the Court to the Employee Handbook for the true and accurate terms and conditions thereof.

36.    Paragraph 36 contains both characterizations of certain terms of an Employee Handbook and purports to reproduce excerpts thereof. Since the Employee Handbook speaks for itself, no response is required and Varughese respectfully refers the Court to the Employee Handbook for the true and accurate terms and conditions thereof.

37.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 37 of the complaint.

**<u>Varughese's Starting Bonus</u>**

38.    Paragraph 38 contains characterizations of certain terms of the Recovery Agreement. Since the Recovery Agreement speaks for itself, no response is required and Varughese respectfully refers the Court to the Recovery Agreement for the true and accurate terms and conditions thereof.

39.    Paragraph 39 contains characterizations of the terms of the Recovery Agreement. Since the Recovery Agreement speaks for itself, no response is required and

Varughese respectfully refers the court to the Recovery Agreement for the true and accurate terms and conditions thereof.

40.     Paragraph 40 appears to contain an excerpt of a provision from the Recovery Agreement.  Since the Recovery Agreement speaks for itself, no response is required and Varughese respectfully refers the Court to the Recovery Agreement for the true and accurate terms and conditions thereof.

41.     Paragraph 41 is a characterization of one of the terms of the Recovery Agreement.  Since the Recovery Agreement speaks for itself, no response is required and Varughese respectfully refers the court to the Recovery Agreement for the true and accurate terms and conditions thereof.

42.     Paragraph 42 of the complaint calls for a legal conclusion for which no response is required.

43.     Paragraph 43 appears to contain an excerpt of one provision of the Recovery Agreement.  Since the Recovery Agreement speaks for itself, no response is required and Varughese respectfully refers the Court to the Recovery Agreement for the true and accurate terms and conditions thereof.

**Varughese's Retention Bonus**

44.     Paragraph 44 contains a characterization of certain terms of a Retention Bonus Agreement.  Since the Retention Bonus Agreement speaks for itself, no response is required and Varughese respectfully refers the Court to the Retention Bonus Agreement for the true and accurate terms and conditions thereof.

45.     Paragraph 45 contains a characterization of the terms of a Retention Bonus Agreement.  Since the Retention Bonus Agreement speaks for itself, no response is

required and Varughese respectfully refers the Court to the Retention Bonus Agreement for the true and accurate terms and conditions thereof.

46.    Paragraph 46 purports to contain an excerpt of one provision of the Retention Bonus Agreement.  Since the Retention Bonus Agreement speaks for itself, no response is required and Varughese respectfully refers the Court to the Retention Bonus Agreement for the true and accurate terms and conditions thereof.

47.    Paragraph 47 contains a characterization of the terms of the Retention Bonus and calls for a legal conclusion for which no response is required.  Varughese respectfully refers the Court to the Retention Bonus Agreement for the true and accurate terms and conditions thereof.

48.    Paragraph 48 contains a characterization of the terms of the Retention Bonus and calls for a legal conclusion for which no response is required.  Varughese respectfully refers the Court to the Retention Bonus Agreement for the true and accurate terms and conditions thereof.

49.    Paragraph 49 contains a characterization of the terms of the Retention Bonus and calls for a legal conclusion for which no response is required.  Varughese respectfully refers the Court to the Retention Bonus Agreement for the true and accurate terms and conditions thereof.

## Varughese Received Restricted Stock Pursuant to Restricted Stock Award Agreement

50.    Admits that Varughese executed a Restricted Stock Award Agreement on or about September 13, 2005.

51.    Paragraph 51 contains characterizations of the terms of the Restricted Stock Award Agreement. Since the Restricted Stock Award Agreement speaks for itself,

no response is required and Varughese respectfully refers the Court to the Restricted Stock Award Agreement for the true and accurate terms and conditions thereof.

52.    Paragraph 52 contains a characterization of the terms of the Restricted Stock Award Agreement and calls for a legal conclusion for which no response is required.  Varughese respectfully refers the Court to the Restricted Stock Award Agreement for the true and accurate terms and conditions thereof.

53.     Paragraph 53 contains a characterization of the terms of the Restricted Stock Award Agreement and calls for a legal conclusion for which no response is required.  Varughese respectfully refers the Court to the Restricted Stock Award Agreement for the true and accurate terms and conditions thereof.

54.    Admits only that Varughese has vested awards of 5,170 shares of restricted stock.  The remaining allegations contained in paragraph 54 are a characterization of the terms of the Restricted Stock Award Agreement and calls for a legal conclusion for which no response is required. Varughese respectfully refers the Court to the Restricted Stock Award Agreement for the true and accurate terms and conditions thereof.

### Varughese's Development
### of New And Competing Business Venture

55.    Denies the allegations contained in paragraph 55 of the complaint.

56.    Denies the allegations contained in paragraph 56 except admits that on March 7, 2007 Varughese sent external counsel an email attaching Navigant's proposed Retention Bonus Agreement, that Varughese signed the Retention Bonus Agreement, and received payment of $115,000 from Navigant.

57.     Denies the allegations contained in paragraph 57 of the complaint except admits that Varughese voluntarily resigned from Navigant in early April, 2007 and that his last day of employment at Navigant was April 20, 2007.

58.     Denies the allegations contained in paragraph 58 of the complaint.

59.     Denies the allegations contained in paragraph 59 of the complaint except admits that Varughese is listed as a contact person for Milestone.

### Varughese's Plot To Raid Navigant's Employees and Business Opportunities

60.     Denies the allegations contained in paragraph 60 of the complaint.

61.     Denies the allegations contained in paragraph 61 of the complaint and alleges that Varughese's team communicated with Navigant subcontractors and received and requested resumes from them in the ordinary course of business.

62.     Denies the allegations contained in paragraph 62 of the complaint and alleges that in fact, in April 2007, Varughese and his team actively directed numerous opportunities towards Navigant.  Specifically, among other opportunities that Varughese's team directed towards Navigant, Varughese caused three Navigant employees to be deployed in positions for Navigant clients in April 2007;  Varughese favorably recommended Navigant to an important target client of Navigant (a well-known investment bank) and actively assisted Navigant in developing this valuable corporate opportunity during the week of April 16, 2007; and Varughese's team discussed and transitioned to Navigant leadership a significant Request for Proposal opportunity from a financial services group during the week of April 23, 2007.

63.     Denies the allegations contained in paragraph 63 of the complaint.

64.     Denies the allegations contained in paragraph 64 of the complaint.

65.    Denies the allegations contained in paragraph 65 of the complaint.

66.    Denies the allegations contained in paragraph 66 of the complaint.

67.    Denies the allegations contained in paragraph 67 of the complaint.

68.    Denies the allegations contained in paragraph 68 of the complaint except admits that Davis is now employed by Milestone and alleges that Davis is not working on the same matters as she worked on at Navigant.

69.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of matters concerning other parties and denies the remaining allegations contained in paragraph 69 of the Complaint except admits that Milham is currently working for Milestone and expressly denies that Milham is working on the same matters as he worked on at Navigant.

70.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of matters concerning other parties and denies the remaining allegations contained in paragraph 70 of the Complaint except admits that Ellis is currently working for Milestone and expressly denies that Ellis is working on the same matters as he worked on at Navigant.

71.    Paragraph 71 contains a characterization of the terms of a Confidentiality and Property Agreement and calls for a legal conclusion for which no response is required.  Varughese respectfully refers the Court to the Confidentiality and Property Agreement for the true and accurate terms and conditions thereof.

72.    Paragraph 72 appears to contain an excerpt of a provision in a Confidentiality and Property Agreement.  Since the Confidentiality and Property Agreement speaks for itself, no response is required and Varughese respectfully refers the

Court to the Confidentiality and Property Agreement for the true and accurate terms and conditions thereof.

73.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of facts relating to third parties and denies the remaining allegations contained in paragraph 73 of the complaint.

74.     Denies the allegations contained in paragraph 74 of the complaint.

**Varughese's Team Steals Corporate Opportunities from Navigant**

75.     Denies the allegations contained in paragraph 75 of the complaint.

**Varughese's Team Takes First Corporate Opportunity**

76.     Denies the allegations contained in paragraph 76 of the complaint.

77.     Denies the allegations contained in paragraph 77 of the complaint.

78.     Denies the allegations contained in paragraph 78 of the complaint.

79.     Denies the allegations contained in paragraph 79 of the complaint, except admits that Varughese's team received numerous resumes from third party consultants in the ordinary course of business and that the resumes of the individuals referenced therein may have been included among them.

80.     Denies knowledge or information sufficient to form a belief as to allegations pertaining to third parties.

81.     Denies that the GFI subpractice ever hired the four non-Navigant consultants to work on matters for Deutsche Bank as alleged in paragraph 81 of the complaint, and denies knowledge or information sufficient to form a belief as to allegations pertaining to the opinions or thoughts of third parties.

82.     Denies the allegations contained in paragraph 82 of the complaint.

**Varughese's Team Takes Second Corporate Opportunity**

83.     Denies the allegations contained in paragraph 83 of the complaint.

84.     Denies the allegations contained in paragraph 84 of the complaint.

85.     Denies the allegations contained in paragraph 85 of the complaint.

86.     Denies the allegations contained in paragraph 86 of the complaint.

87.     Denies knowledge or information sufficient to form a belief as to truth or falsity of allegations pertaining to third parties as alleged in paragraph 87 of the complaint.

88.     Denies the allegations contained in paragraph 88 of the complaint.

89.     Denies knowledge, information or belief sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 89 of the complaint, and alleges that numerous resumes were sent to Varughese's team in the ordinary course of business and that the resume of the consultant in question may have been emailed to Varughese's team.

90.     Denies the allegations contained in paragraph 90 of the complaint.

**Varughese's Team Takes Third Corporate Opportunity**

91.     Admits the allegations contained in paragraph 91 of the complaint and alleges that Navigant terminated its relationship with the client referenced in this paragraph and that Sandhu's role with this client ended as a consequence thereof.

92.     Admits the allegations contained in paragraph 92 of the complaint, but alleges that Varughese replaced the Navigant consultant at issue with Sandhu at the express request of the client because of the client's ongoing dissatisfaction with the performance of the Navigant consultant, which dissatisfaction was known to Navigant's leadership.

93.     Denies the allegations contained in paragraph 93 of the complaint.

94.     Denies the allegations contained in paragraph 94 of the complaint.

**Varughese's Team Attempts to Take Another Corporate Opportunity**

95.     Denies the allegations contained in paragraph 95 of the complaint.

96.     Denies knowledge or information sufficient to form a belief as to truth or falsity of allegations pertaining to third parties as alleged in paragraph 96.

97.     Denies the allegations contained in paragraph 97 of the complaint and alleges that upon information and belief, Carson is working for Navigant.

**COUNT I- BREACH OF FIDUCIARY DUTY AND AIDING AND ABETTING OTHERS IN BREACH OF THEIR FIDUCIARY DUTIES**

98.     Varughese repeats and realleges each of his responses set forth in paragraphs 1 through 97 above as if fully set forth herein.

99.     Denies the allegations contained in paragraph 99 of the complaint.

100.    Denies the allegations contained in paragraph 100 of the complaint.

101.    Denies the allegations contained in paragraph 101 of the complaint.

102.    Denies the allegations contained in paragraph 102 of the complaint.

**COUNT II- BREACH OF CONTRACT**

103.    Varughese repeats and realleges each of his responses set forth in paragraphs 1 through 102 above as if fully set forth herein.

104.    Denies the allegations contained in paragraph 104 of the complaint.

105.    Denies the allegations contained in paragraph 105 of the complaint.

106.    Denies the allegations contained in paragraph 106 of the complaint, and alleges that Varughese is entitled to retain his vested shares under the Restricted Stock Agreement because he did not breach any term of his employment agreement.

14

## COUNT III- REPAYMENT UNDER RECOVERY AGREEMENT
## AND RETENTION BONUS AGREEMENT

107.    Varughese repeats and realleges each of his responses set forth in paragraphs 1 through 106 above as if fully set forth herein.

108.    Denies the allegations contained in paragraph 108 of the complaint.

109.    Denies the allegations contained in paragraph 109 of the complaint except admits that Varughese's starting date at Navigant was in or about August 31, 2005 and that his last day of employment at Navigant was April 20, 2007, and alleges that Navigant subsequently represented to Varughese that the bonus paid to him was remuneration for Varughese's forfeiture of his 2005 bonus and stock vesting opportunities from his prior employer, and was thus a non-refundable payment to compensate Varughese for lost opportunities that he would be entitled to retain even if he later chose to leave Navigant.

110.    Denies the allegations contained in paragraph 110 of the complaint, and alleges that, even if Navigant's false assertion regarding repayment were correct, under the terms of the Recovery Agreement, Navigant has incorrectly calculated the amounts purportedly due.

111.    Denies the allegations contained in paragraph 111 of the complaint.

112.    Denies the allegations contained in paragraph 112 of the complaint except admits that the Retention Bonus Agreement was signed in or about March 9, 2007 and that Varughese's last day of employment at Navigant was April 20, 2007, and alleges that Navigant subsequently represented both orally and in writing to Varughese that the funds paid to him under the Retention Bonus Agreement was compensation for work that Varughese performed in 2006, and thus part of Varughese's 2006 compensation.

113.    Denies the allegations contained in paragraph 113 of the complaint, and alleges that, even if Navigant's false assertion regarding repayment were correct, Navigant has incorrectly calculated the amounts purportedly due under the Retention Bonus Agreement, as modified by the express representations made by Navigant to Varughese and others regarding the calculation of repayment under that agreement.

114.    Denies the allegations contained in paragraph 114 of the complaint.

## COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030 ET SEQ)

115.    Varughese repeats and realleges each of his responses set forth in paragraphs 1 through 114 above as if fully set forth herein.

116.    Denies the allegations contained in paragraph 116 of the complaint.

117.    Denies the allegations contained in paragraph 117 of the complaint.

118.    Denies the allegations contained in paragraph 118 of the complaint.

119.    Denies the allegations contained in paragraph 119 of the complaint.

120.    Denies the allegations contained in paragraph 120 of the complaint.

121.    Denies the allegations contained in paragraph 121 of the complaint.

122.    Denies the allegations contained in paragraph 122 of the complaint.

123.    Denies the allegations contained in paragraph 123 of the complaint.

## RESPONSE TO PRAYER FOR RELIEF

124.    Varughese denies that Navigant is entitled to any of the relief requested or to any other relief.

## FIRST AFFIRMATIVE DEFENSE

125.    The complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

126.    The claims are barred by the doctrines of unclean hands and equitable estoppel. As set forth in more detail in Varughese's counterclaims, Navigant aggressively solicited Varughese and convinced him to leave his prior employment by making false and fraudulent promises about the compensation Varughese would receive at Navigant and the position he would hold.  Navigant targeted Varughese while still employed elsewhere and actively lured him from his prior employer in the hopes of building a practice group that it was otherwise ill-equipped to build.

## THIRD AFFIRMATIVE DEFENSE

127.    Navigant's breach of contract claims are barred, in whole or in part, by its own material breach of the various agreements.

## FOURTH AFFIRMATIVE DEFENSE

128.    Navigant's breach of contract claims are barred because Navigant fraudulently induced Varughese to enter into the various agreements, and those agreements therefore must be rescinded.

## FIFTH AFFIRMATIVE DEFENSE

129.    Navigant's breach of contract claims under the Recovery Agreement and Retention Bonus Agreement are barred by the doctrines of modification and/or waiver. Specifically, Navigant cannot prevail on its claim under the Recovery Agreement to recover a portion of the sign-on bonus paid to Varughese because Navigant subsequently represented to Varughese that the bonus paid to him was remuneration for Varughese's forfeiture of his 2005 bonus and stock vesting opportunities from his prior employer, and was thus a non-refundable payment to compensate Varughese for lost opportunities that he would be entitled to retain even if he later chose to leave Navigant.  Likewise,

Navigant cannot recover on its claim under the Retention Bonus Agreement because Navigant subsequently represented both orally and in writing to Varughese that the funds paid to him under the Retention Bonus Agreement was compensation for work that Varughese performed in 2006, and thus part of Varughese's 2006 compensation. Even if Navigant's false assertions regarding repayment under these agreements were correct, Navigant has incorrectly calculated the amounts purportedly due under them.

## COUNTERCLAIMS

### Summary of Counterclaims

130.    These counterclaims arise out of Navigant's systemic fraudulent practice of soliciting individuals from other companies and inducing those individuals to join Navigant by making false and fraudulent promises that it never intends to keep. As discussed in more detail below, Navigant embarked on a carefully crafted campaign of false representations and aggressive solicitation techniques designed to lure Varughese from his then-place of employment and to exploit his extensive knowledge of the financial services industry to build a successful capital markets group at Navigant that never existed before.

131.    Although Varughese successfully built a significant capital market presence at Navigant, Navigant breached its agreement to provide additional compensation to Varughese based on his division's performance. In addition, Navigant fraudulently reneged on its express promise – which it never intended to keep at the time it was made – to make Varughese head of Navigant's Financial Services Practice, and thus fraudulently induced Varughese to accept a position at Navigant that he never would have accepted if Navigant had told him the truth.

132.    Rather than own up to its breach of promises and fraud, Navigant instead commenced this action in willful retaliation for Varughese commencing his own legitimate business in the very sector in which he has devoted the last fifteen years of his professional life and in which Navigant would have no significant presence but for Varughese's unique contributions.  Navigant's action is nothing more than a transparent attempt to shut down legitimate competitive conduct by a former employee.  On the other hand, Varughese's counterclaims are a legitimate attempt by Varughese to redress the harm caused by Navigant's breach of contract and fraud.  By this action, Varughese also seeks punitive damages against Navigant, based on its willful and fraudulent conduct as alleged herein.

## Jurisdiction and Venue

133.    This Court has jurisdiction over the counterclaims under 28 U.S.C. § 1332 because Navigant is incorporated in Delaware and has its principal place of business in Illinois, and Varughese is a citizen of the State of New York, and the amount in controversy, exclusive of interests and costs, exceeds the sum of  $75,000.  In addition, this Court has supplemental jurisdiction over these counterclaims under 28 U.S.C. § 1367.  Venue is appropriate in this District for the same reasons alleged in the complaint.

## Factual Allegations For Counterclaims

### Navigant Targets Varughese As A Valuable Recruit And Aggressively Solicits Him to Leave Bearing Point

134.    In 2005, Navigant decided to develop a new practice area in capital markets – an area in which Navigant had little or no prior expertise.

135.    Navigant had previously hired a former employee of Bearing Point.  In the course of his employment at Navigant, this individual, on information and belief,

identified Varughese as a valuable potential recruit at Bearing Point who could be instrumental in helping Navigant build a capital markets practice, and to assist in the development of its existing financial services practice.

136.    As Navigant learned from its investigation, Varughese at the time had over fifteen years of experience and expertise in the capital markets and global financial services business in New York, and was already a well-known consulting professional in this segment of the market.

137.    In or about January 2005, Varughese received a series of unsolicited telephone calls from Navigant employees actively encouraging him to consider leaving his position at Bearing Point for a position at Navigant.

138.    From the representations that Navigant employees made to him at the time, it was clear to Varughese that Navigant had conducted extensive background research about him and his qualifications, and had targeted him as a valuable recruit in its effort to build a capital markets practice.

139.    Varughese resisted Navigant's initial attempts to recruit him and declined repeated overtures to meet with it to discuss a position at Navigant.

### Navigant Induces Varughese To Join Navigant With False Promises It Never Intended To Keep

140.    In February 2005, Varughese agreed to have lunch with Doug Reichert, Navigant's Executive Managing Director, to discuss a possible position with Navigant.

141.    At the lunch, Reichert told Varughese that Navigant was extremely interested in having Varughese join Navigant, and that Navigant was prepared to do everything it could to make that possible.

142.    In mid-February 2005, Varughese agreed to have a breakfast meeting in New York with Julie Howard ("Howard"), Navigant's Chief Operating Officer, to discuss the new position.  Howard flew to New York for the sole purpose of meeting with Varughese and persuading him to join Navigant.

143.    At that meeting, Varughese explained that he had some questions about the position that Navigant envisioned for him – in particular, Varughese was not sure who within Navigant was hiring him, and what precisely his role would be within Navigant.

144.    Howard told Varughese that she was hiring him, that Varughese would report directly to Howard, and that Howard intended to make Varughese the head of Navigant's Financial Services Practice once that practice group was created as a distinct practice group within Navigant.

145.    At the time of the breakfast, Navigant's financial services practice was a part of its Financial Insurance & Claims Services ("FICS") Practice.  Howard told Varughese that the FICS Practice was shortly going to be separated into two separate practice groups, one of which would be a new practice group, called the Financial Services Practice, devoted exclusively to financial services.  Howard told Varughese that the Financial Services Practice would be established in approximately three months, and that Varughese would be head of the Financial Services Practice from its inception.

146.    In or about late May 2005, Reichert and Varughese met to negotiate the terms of Varughese's potential employment with Navigant.  Reichert told Varughese that he could expect to receive total compensation of 20% of the net revenue generated by the GFI subpractice under his direction.  Reichert explicitly represented to Varughese that if

the 20% of net revenue figure for a given year exceeded the amount that Varughese was to receive from his base salary and any additional bonuses outlined in his written employment agreement, Navigant would pay him an additional bonus to ensure that his total compensation package equaled 20% of the net revenue generated by the GFI subpractice.

147.     In late June, Reichert called Varughese and asked him what it would take to finalize the deal and get Varughese to join Navigant. Varughese told Reichert that he needed another confirmation directly from Howard that he would be made head of the Financial Services as previously represented.  Reichert arranged for Varughese and Howard to speak directly for the express purpose of confirming Navigant's promise that Varughese would head the Financial Services Practice.  During that phone call, Varughese explained to Howard that he would not leave his position at Bearing Point and accept Navigant's offer of employment unless he received assurances that, as Howard previously had promised, the Financial Services Practice was going to be established as a separate practice group within a few months, and that Varughese would be made the head of that practice at its inception.

148.     Howard expressly confirmed to Varughese that the Financial Services Practice would be split off from FICS in a few months, and that Varughese would be made head of the Financial Services Practice at that time.

149.     Based on Navigant's practices at the company and representations that were made to Varughese at the time of his resignation, it is apparent that Navigant never intended to meet its compensation promises.  It was also clear from Navigant's actions as set forth in more detail below – namely, its decision to make Voelzke the head of the

Financial Services Practice instead of Varughese – that Navigant also never intended to make Varughese the head of the Financial Services Practice.

150.    Navigant falsely promised Varughese that he would be the head of the Financial Services practice in order to fraudulently induce him to leave his position with Bearing Point and to join Navigant.

151.    Upon information and belief, Navigant makes it a practice to solicit and recruit high-level consultants, such as Varughese, by making false promises that it never intends to keep.

### Varughese Accepts Navigant's Offer of Employment

152.    On June 29, 2005, Navigant sent Varughese an offer of employment.

153.    Navigant's offer of employment contained provisions concerning certain aspects of Varughese's compensation package, including, among other things, his starting salary, the Employment Incentive Bonus, the Variable Incentive Compensation, and an Initial Equity Grant.

154.    On July 15, 2005, Varughese accepted Navigant's offer of employment in writing, and signed the related agreements referenced in the Complaint (collectively, the "written employment agreement").

155.    The written employment agreement did not address Navigant's separate promise to Varughese that he would be entitled to a total compensation package of 20% of the net revenues generated by the GFI subpractice, and that if the compensation outlined in the written employment agreement was less than the 20% figure, Navigant would pay Varughese additional bonuses to ensure that his total compensation was equal to that 20% figure.  The written employment offer did not did not contain an integration

clause stating that the written employment agreement represented the entire agreement between the parties.

156.    Rather, both parties understood that Varughese's employment agreement included the additional term, to which the parties orally agreed, that Varughese would receive total compensation in an amount equal to 20% of net revenue generated by the GFI subpractice.

**Varughese Brings His Substantial Expertise and Experience to Navigant And Creates A Successful Capital Markets Practice**

157.    Varughese began employment at Navigant on or about August 31, 2005.

158.    As Navigant had hoped when it recruited him, Varughese brought with him comprehensive knowledge and expertise in the capital markets area, including an understanding of pricing and typical contractual arrangements, client needs, and marketing strategies; prospective clients, and subcontractors; and a strategic vision for creating a successful financial services practice targeted at capital markets and investment management clients.

159.    Before Varughese joined Navigant, Navigant did not possess any of this expertise or experience in the capital markets area.

160.    In 2006, Varughese exceed all stated revenue goals for the GFI subpractice.  Under Varughese's leadership, the GFI subpractice significantly exceeded its goals for the period of the 2007 through the end of April.

161.    Varughese's experience and expertise were thus indispensable to Navigant's ability to develop and create a successful capital markets practice.

## From The Start, Navigant Breaches Its Promise
## To Pay Varughese 20% of Net Revenue

162.    During the course of his employment with Navigant, Navigant failed to fulfill its promise that Varughese would receive a total compensation package equal to 20% of net revenue generated by the GFI subpractice.

163.    Indeed, although Varughese's division generated approximately $7- $8 million in net revenue in 2006, Varughese's total compensation for 2006 was approximately $815,000 – an amount far short of the 20% net revenue figure (approximately $1.4 - $1.6 million) that Navigant expressly promised to pay him.

164.    Varughese later learned, from Voelzke and others within Navigant, that Navigant had a practice of making similar promises of compensation packages equaling 20% of net revenue in an effort to induce prospective hires to join Navigant.

165.    Indeed, on at least one occasion during his employment at Navigant, Varughese personally observed high-level Navigant employees making similar promises to prospective acquisition candidates of Navigant.

166.    It was generally understood within Navigant that Navigant would make such promises solely to induce prospective hires to join Navigant, that Navigant never intended to fulfill these promises, and that it did not in fact do so.   Navigant's failure to live up to these promises caused, and is causing, substantial and widespread discontent among Navigant's workforce.

## In Furtherance Of Its Fraudulent Scheme, Navigant
## Fails to Make Varughese Head of Financial Services

167.    Notwithstanding Varughese's indispensable contribution to Navigant's efforts to develop and create a capital markets practice area, and its express and repeated promises that Varughese would be named head of the Financial Services Practice once it

was created, Navigant announced in or about November 2005 that Voelzke was to be named head of that practice.

168.    The decision to appoint Voelzke as head of the Financial Services Practice had no sound business justification inasmuch as Voelzke was not regarded as a strategic thinker and did not possess the extensive experience and proven leadership that Varughese had demonstrated in the capital markets and financial services area for over fifteen years.  In fact, Voelzke's experience was primarily in the insurance and claims services sector.

169.    In October 2005 – one month before Voelzke was named head of the Financial Services Practice – Varughese was sent a company email containing an organizational chart of Navigant's financial services and insurance practices.  The chart listed Voelzke, not Varughese, as the head of the Financial Services Practice.

170.    Navigant obviously never intended to make Varughese the head of the Financial Services Practice, and had a secret and undisclosed intention to name Voelzke as head of that practice instead.

171.    Navigant falsely told Varughese otherwise solely for the purpose of fraudulently inducing him to leave his position with Bearing Point and join Navigant.

172.    On information and belief, Navigant has a practice of making similar false and fraudulent representations to prospective employees in an effort to induce them to join Navigant and to leave valuable employment positions.

## FIRST COUNTERCLAIM
### (Fraudulent Inducement)

173.    Varughese repeats and realleges Paragraphs 1 through 172 above as if fully set forth herein.

174.    Navigant fraudulently induced Varughese to accept employment at Navigant, and to leave his position at Bearing Point, by falsely stating that Varughese would be made head of the Financial Services Practice at Navigant once that practice was established.

175.    Navigant knew when it made this representation that Varughese would leave his position at Bearing Point, and take a position with Navigant, only if Navigant would make Varughese the head of its Financial Services Practice.

176.    Navigant's representation, although separate from and extraneous to Navigant's offer of employment, was highly material to Varughese's decision to leave Bearing Point and join Navigant.

177.    At the time Navigant made this representation, it had a preconceived and undisclosed intention of never carrying it out.  Instead, Navigant always had intended to make Voelzke the head of its Financial Services Practice.

178.    Navigant promised Varughese otherwise with the intention of fraudulently inducing him to leave a valuable position at Bearing Point and to join Navigant.

179.    Navigant had a clear motive and opportunity to fraudulently induce Varughese to join Navigant because Navigant was actively recruiting Varughese; knew that Varughese was a highly valuable recruit who would be essential to Navigant's ability to build a successful capital markets practice, and to develop an overall strategic vision for the Financial Services Practice; and knew that Varughese would not be willing to join Navigant unless he was assured that he would be made head of the Financial Services Practice.

180.    Navigant demonstrated its consciousness of its fraudulent conduct by appointing Voelzke to head the Financial Services Practice instead of Varughese – despite the fact that Varughese was obviously more qualified to be the head of that practice, and had been hired with the express understanding that that would be his primary role at Navigant.

181.    Furthermore, Navigant's secret and undisclosed intention of making Voelzke head of the Financial Services Practice is demonstrated by the circulation of an organizational chart listing Voelzke as the head of the Financial Services Practice approximately one month before the formal announcement naming Voelzke head of that practice.

182.    Varughese reasonably relied on Navigant's false representations in deciding to leave his employment at Bearing Point and to join Navigant.

183.    As a direct result of Navigant's fraudulent inducement of Varughese, Varughese has suffered damages in the form of, but not limited to, lost employment opportunities at Bearing Point, loss of professional opportunities, loss of professional reputation, diminution of his earnings and earning capacity, and damage to his career growth and potential.

184.    Varughese is entitled to rescission of his employment agreement due to Navigant's fraudulent inducement.  In addition, Varughese is entitled to compensatory damages to remedy Navigant's fraudulent inducement.

185.    Because of Navigant's fraudulent motives in soliciting Varughese to leave his former employment, its conscious disregard of Varughese's interests, its egregious

conduct, and its reckless pattern of similar fraudulent solicitation targeted at other valuable potential employees, Varughese is entitled to an award of punitive damages.

## SECOND COUNTERCLAIM
### (Breach of Contract)

186.    Varughese repeats and realleges Paragraphs 1 through 185 above as if fully set forth herein.

187.    The terms of Varughese's employment relationship are partially reflected in the written employment agreement that was executed by the parties on July 15, 2005.

188.    In addition to the specific terms set forth in the written employment agreement, Navigant expressly promised that Varughese's total compensation package would be equal to 20% of the net revenue generated by the GFI subpractice, and that Navigant would pay Varughese any additional bonuses (beyond those set out in the written employment agreement) necessary to ensure that his total compensation equaled that amount.

189.    Varughese expressly accepted this offer and both parties considered it to be a material term of his employment agreement with Navigant.

190.    Navigant breached this contractual obligation by failing to compensate Varughese for 20% the net revenue generated by the GFI subpractice during the course of his employment with Navigant.

191.    As a result of Navigant's breach, Varughese has suffered damages in an amount to be determined at trial, but not less than $1.2 million.

192.    Varughese is therefore entitled to an award of compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Varughese respectfully requests that the Court enter judgment in favor of Varughese and against Navigant, and enter an Order:

(a)     dismissing the complaint in its entirety;

(b)     on his counterclaim for fraudulent inducement, rescinding the contract and awarding Varughese compensatory damages in an amount to be determined at trial, and punitive damages in an amount to be determined at trial but not less than $1,000,0000.

(c)     on his counterclaim for breach of contract, awarding Varughese damages in an amount to be determined at trial, but not less than $1.2 million arising from Navigant's breach of contract; and

(d)     awarding Varughese such other and further relief as may be just and proper.

Dated: June 28, 2007
       New York, New York

**COHEN & GRESSER LLP**

By: _Karen H. Bromberg_

Karen H. Bromberg (KB 2153)
Marc E. Isserles

100 Park Avenue, 23rd Floor
New York, NY 10017
Phone:  (212) 957-7600
Fax:  (212) 957-4514

*Attorneys for Defendant*
*Jess Varughese*