UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

NAVIGANT CONSULTING, INC., a Delaware   :
corporation,   :
  :
      Plaintiff-Counterdefendant,   :
  :
  :  Case No. 07 CIV 4854 (PKL)
     - against -   :
  :
  :
JESS VARUGHESE, an individual,   :
  :
     Defendant-Counterplaintiff.   :
------------------------------------------------------------x

## DEFENDANT-COUNTERPLAINTIFF'S OPPOSITION TO PLAINTIFF-COUNTERDEFENDANT'S MOTION TO DISMISS THE AMENDED COUNTERCLAIMS

**COHEN & GRESSER LLP**

Karen H. Bromberg (KB 2153)
Alexandra Wald (AW 0225)
Marc E. Isserles

100 Park Avenue, 23rd Floor
New York, NY 10017
Phone: (212) 957-7600
Fax: (212) 957-4514

*Attorneys for Defendant-Counterplaintiff*
*Jess Varughese*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................ii

Preliminary Statement..................................................................................... 1

Standard Governing Motion ........................................................................... 4

Argument ........................................................................................................ 5

    I.    Varughese's Purported "Ratification" Does Not Bar A Fraudulent Inducement Claim For Monetary Damages..................................................5

    II.    Varughese Has Stated a Valid Claim For Breach of Contract....................9

        a.    Varughese's Oral Contract Claim Is Not Foreclosed By Navigant's Reservation of Discretion in the Offer Letter...............9

        b.    The Offer Letter Is Not A Fully Integrated Agreement Barring Parol Evidence .................................................................11

            i.    *The Stock Award Agreement's Integration Clause Does Not Apply To The Offer Letter.*..................................11

            ii.    *The Offer Letter And The Surrounding Circumstances Demonstrate That It Is Not A Fully Integrated Agreement* ........................................15

        c.    Navigant's Oral Compensation Promise To Pay Varughese 20% of The Net Revenue Does Not Contradict Or Vary The Written Agreements.................................................................19

    III.    Varughese Also States A Claim For Breach of Contract As Modified By Navigant's Post-Employment Oral Compensation Promises...............21

# TABLE OF AUTHORITIES

Page

**Cases**

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,* 485 F.3d 85
(2d Cir. 2007)........................................................................................ 13, 24

*Adler & Shaykin v. Wachner*, 721 F. Supp. 472 (S.D.N.Y. 1988)............................. 15, 19

*Andreasen, Inc, v. Orly Int'l., Inc.*, No. 88 Civ. 3529 (KMW), 1990 WL
104020 (S.D.N.Y. July 17, 1990) .............................................................. 22

*Arias-Zeballos v. Tan*, No. 06 Civ. 1268 (GEL), 2006 WL 3075528
(S.D.N.Y. Oct. 26, 2006) ...................................................................... *passim*

*Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*,
850 F. Supp. 1199 (S.D.N.Y. 1994)............................................................ 6

*Backer v. Lewit*, 180 A.D.2d 134, 584 N.Y.S.2d 480 (1st Dep't 1992) ........................... 22

*Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109, 611 N.Y.S.2d
533 (1st Dep't 1994) ................................................................................ 7, 8

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13 (2d
Cir. 1996) ................................................................................................ 5

*Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d
461 (2d Dep't 1982)................................................................................ 7, 8

*Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004) ..................................................... 5

*Conley v. Givson,* 355 U.S. 41 (1957) ................................................................................. 5

*DDCLAB Ltd. v. E.I. Du Pont De Nemours & Co.*, No. 03 CV 3654GBD,
2005 WL 425495 (S.D.N.Y. Feb. 18, 2005)............................................ 22

*E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F. Supp. 2d 277
(S.D.N.Y. 2000).......................................................................... 15, 16, 18

*Gregory v. Daly,* 243 F.3d 687 (2d Cir. 2001) ................................................................. 4

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d
59 (2d Cir. 1997)....................................................................................... 4

*Hangzhou Silk Imp. & Exp. Corp. v. P.C.B. Int'l Indus., Inc.*, No. 00 Civ.
6344 (RLC), 2002 WL 2031591 (S.D.N.Y. Sept. 5, 2002) .................... 7, 8

Page

*Harden v. Warner Amex Cable Communications Inc.*, 642 F. Supp. 1080
(S.D.N.Y. 1986) ..................................................................................... 16

*Hudson v. IRS*, No. 03-CV-172, 2004 WL 1006266 (N.D.N.Y. Mar. 25,
2004) ................................................................................................... 17

*Hyman v. IBM Corp.*, No. 98 Civ. 1371 (JSM), 2000 WL 1538161
(S.D.N.Y. Oct. 17, 2000) ...................................................................... 8

*In re Ore Cargo, Inc.*, 544 F.2d 80 (2d Cir. 1976) ......................................... 16

*Joseph Victori Wines v. Vina Santa Carolina S.A.*, 933 F. Supp. 347
(S.D.N.Y. 1996) ............................................................................... 20, 21

*Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335 (E.D.N.Y. 2003) ............ 22

*Lam v. American Express Co.*, 265 F. Supp. 2d 225 (S.D.N.Y. 2003) ............... 9

*Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp.*, 269
F. Supp. 2d 206 ............................................................................ 15, 16, 19

*Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 768 F. Supp. 115
(S.D.N.Y. 1991) ...................................................................................... 7

*Municipal Capital Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d
379 (S.D.N.Y. 2002) ............................................................................. 17

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Am. Re-Ins. Co.*, 351 F. Supp. 2d
201 (S.D.N.Y. 2005) ............................................................................ 13

*Oxyn Telecomms., Inc. v. Onse Telecom*, No. 01 Civ. 1012(JSM), 2003
WL 22271224, at *4 (S.D.N.Y. September 30, 2003) .............................. 20

*Petrello v. White*, 412 F. Supp. 2d 215 (E.D.N.Y. 2006) ................................. 8

*Point Developers, Inc. v. F.D.I.C.*, 921 F. Supp. 1014 (E.D.N.Y. 1996) ........ 16, 18

*Regent Partners, Inc. v. Parr Dev. Co.*, 960 F. Supp. 607 (E.D.N.Y. 1997) ...... 22

*Salzmann v. Prudential Securities, Inc.*, No. 91 Civ. 4253 (KTD), 1994
WL 191855 (S.D.N.Y. May, 16 1994) ..................................................... 19

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) ......................................................... 4

*Smalley v. Dreyfus Corp.*, 40 A.D.3d 99, 832 N.Y.S.2d 157 (1st Dep't
2007) ..................................................................................................... 9

*Sotheby's Fin. Servs., Inc. v. Baran*, No. 00 Civ. 7897 (BSJ), 2003 WL
21756126 (S.D.N.Y. July 29, 2003) ......................................................... 6

Page

*SR Int'l Bus. Ins. Co. v. World Trade Center Properties, LLC*, 222 F.
     Supp. 2d 385 (S.D.N.Y. 2002)................................................................. 21

*Stanley v. Bray Terminals, Inc.*, 197 F.R.D. 224 (N.D.N.Y. 2000)................................. 20

*Stewart v. Jackson & Nash*, 976 F.2d 86 (2d Cir. 1992) .................................................. 8

*Taylor v. Blaylock & Partners, L.P.*, 240 A.D.2d 289, 659 N.Y.S.2d 257
     (1st Dep't 1997)......................................................................................... 22

*Tierney v. Capricorn Investors, L.P.,* 189 A.D.2d 629, 592 N.Y.S.2d 700
     (1st Dep't 1993)......................................................................................... 23

*US West Fin. Servs., Inc. v. Tollman*, 786 F. Supp. 333 (S.D.N.Y. 1992) ...................... 21

*Vitale v. Coyne Realty, Inc.*, 66 A.D.2d 562, 414 N.Y.S.2d 388 (4th Dep't
     1979)............................................................................................................ 7

*Wayland Inv. Fund, LLC v. Millennium Seacarriers, Inc.,* 111 F. Supp. 2d
     450 (S.D.N.Y. 2000).......................................................................... 15, 19

*Wilson-Gray v. Jay Feinberg, Ltd.*, No. 90 Civ. 0001 (MBM), 1990 WL
     209635 (S.D.N.Y. Dec. 17, 1990) ......................................................... 19

**Statutes**

Fed. R. Civ. P. 8(e)(2) ........................................................................................................ 7

N.Y. Gen. Obligations Law § 15-301(1) .......................................................................... 23

Defendant-Counterplaintiff Jess Varughese ("Varughese") respectfully submits this brief in opposition to Plaintiff-Counterdefendant Navigant Consulting, Inc.'s ("Navigant") motion to dismiss Varughese's amended counterclaims.

## Preliminary Statement

This lawsuit arises out of a disgruntled consulting firm's effort to blame its own failing business on two former employees who had the temerity simply to embark on a new business venture. Importantly, Navigant does not, because it cannot, challenge any actions taken by Varughese, or his colleague, Konstantine Kostakis,[1] since their resignation from Navigant. Unable to bring legitimate claims alleging unlawful conduct by a competing business, Navigant instead concocts claims against Varughese and Kostakis based on actions they allegedly took while still employed at Navigant. Specifically, Navigant alleges that, during his last few weeks of employment, Varughese allegedly solicited three junior-level Navigant consultants to join the new venture, and that his team somehow "set aside" four ill-defined business opportunities for that venture by staffing certain projects with third-party consultants rather than Navigant employees.

It is hard to imagine why Navigant would seek to pursue these pre-resignation claims – which, even if true, could not possibly amount to significant damages – save for spite, harassment, or a desperate effort to send a message to other Navigant employees that they are not free to compete. Regardless, as Varughese will demonstrate after discovery, these claims are pure fiction. Varughese never solicited any Navigant

---

[1] Navigant's separate action against Kostakis, which arises from the identical set of facts and asserts materially identical causes of action (with the exception of one claim that Navigant brought only against Varughese), is pending before Judge Sifton in the Eastern District of New York, No. 07 CIV 2302. Navigant has also moved to dismiss the counterclaims in that action. In the interest of judicial efficiency, Kostakis and Varughese requested that Navigant consolidate these actions. Navigant inexplicably rejected this request, and has insisted on burdening two separate courts with duplicative motion practice and litigation arising out of the same facts.

consultants to join the new venture.  And Navigant's claim that Varughese's team was engaged in a sinister plot to "set aside" business opportunities by allegedly staffing certain projects with third party consultants smacks of true desperation.  As Navigant acknowledges in the Complaint itself, the company routinely uses third-party consultants instead of Navigant employees where the particular project requires such staffing.  Thus, Navigant's central claim in this lawsuit is the facially incredible claim that Varughese's team somehow committed acts of disloyalty simply by following company policy.  Moreover, Varughese directed numerous, high-value opportunities to Navigant at the very same time at which his team allegedly was "setting aside" opportunities through routine staffing decisions.

In addition to denying Navigant's legal claims in his Answer, Varughese asserted counterclaims for fraudulent inducement and breach of contract arising out of Navigant's failure to honor its promises that Varughese would be made head of Navigant's Financial Services Practice, and that his annual compensation would equal 20% of the net revenue generated by Navigant's Global Financial Institutions subpractice ("GFI subpractice"), of which Varughese was the practice area leader.  Navigant now moves to dismiss Varughese's amended counterclaims under Fed. R. Civ. P. 12(b)(6).

Navigant first argues that Varughese's fraudulent inducement counterclaim should be dismissed because Varughese purportedly seeks to rescind his employment agreement.  According to Navigant, Varughese is not entitled to rescind his agreement because he allegedly ratified it by accepting compensation for his work at Navigant.  But that argument goes nowhere because Varughese plainly is *not* seeking to rescind his agreement by means of his counterclaim for fraudulent inducement, which seeks

monetary damages alone.  Contrary to the entire thrust of Navigant's motion – which rests on a blatant misrepresentation of the governing law – it is well-settled that accepting the benefits of an agreement does *not* invalidate a cause of action for fraudulent inducement seeking monetary damages.

Navigant's motion to dismiss Varughese's breach of contract counterclaim is equally unsound.  Navigant first argues that the alleged oral promise to pay Varughese total compensation of 20% of the net revenue generated by the GFI subpractice is somehow foreclosed by provisions in the Offer Letter giving Navigant discretion to alter certain compensation promises.  But the discretionary provisions on which Navigant relies govern compensation programs that Navigant makes available to all of its employees, and those provisions do not govern the separate, non-discretionary oral promise that Navigant made to Varughese individually.

Navigant next raises the parol evidence rule as an alleged bar to Varughese's oral contract claim.  By lumping numerous, discrete employment agreements into a fictitious "singular agreement," Navigant hopes to convince this Court to treat an integration clause found in one of those agreements (the "Stock Award Agreement") as somehow applicable to an entirely different agreement (the "Offer Letter").  But Navigant's "singular agreement" theory is a fabrication disproved by the plain language of the agreements themselves, which make clear that the integration clause of the Stock Award Agreement governs that agreement alone, and has no application to the Offer Letter.  In the end, Navigant utterly fails to meet its burden to prove that the Offer Letter is a fully integrated agreement foreclosing proof of an additional oral compensation agreement.  Moreover, contrary to Navigant's argument, the oral promise that Varughese would

receive total compensation equal to 20% of the net revenue generated by the GFI subpractice does not contradict or vary the terms of the written agreements because those agreements do not place a ceiling on Varughese's total compensation.

Navigant also raises the parol evidence rule in a misguided effort to dismiss Varughese's alternative claim that Navigant's post-employment oral compensation promises constitute a binding oral modification of the Offer Letter. Once again the law is expressly the *opposite* of what Navigant claims it to be: subsequent oral modifications are plainly *not* subject to the parol evidence rule. And Navigant's half-hearted allusion to a "no oral modification" clause in yet a third agreement must fail because the "no oral modification" clause that it relies upon is clearly limited on its face to the specific agreement in which it appears.

For these reasons, Varughese respectfully requests that this Court deny Navigant's motion to dismiss the amended counterclaims.

## Standard Governing Motion

In ruling on Navigant's motion to dismiss, this Court "must accept as true all of the factual allegations set out, draw inferences from those allegations in the light most favorable to" Varughese, and "construe the complaint liberally." *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001) (quoting *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir. 2000)). Thus, "[t]he issue is not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 62-63 (2d Cir. 1997). As such, a claim should not be dismissed "unless it appears beyond doubt that the [claimant] can prove no set of facts in support of

his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46

(1957); *Condit v. Dunne*, 317 F. Supp. 2d 344, 355 (S.D.N.Y. 2004).

**Argument**

**I.    Varughese's Purported "Ratification" Does Not Bar A Fraudulent Inducement Claim For Monetary Damages**

In moving to dismiss Varughese's counterclaim for fraudulent inducement based

upon Navigant's pre-employment promises, Navigant does not, because it cannot, argue

that Varughese has failed adequately to allege any of the requisite elements of a fraud

claim.[2]  Instead, Navigant invents an additional legal requirement – namely, that in order

to obtain relief for fraudulent inducement to enter into a contract, a plaintiff also must

show that he did not ratify or accept any of the benefits of the contract.

In advancing this novel argument, Navigant mistakenly points to Varughese's

Fourth Affirmative Defense to Navigant's breach of contract claim*, which seeks*

rescission.  (*See* Varughese's Fourth Affirmative Defense, ¶ 128 (raising affirmative

defense of fraudulent inducement)).  Navigant complains that Varughese may not rescind

his employment agreement because he allegedly ratified that agreement by accepting

compensation from Navigant.  (*See* Mem. at 7-8.  And because Varughese's purported

ratification allegedly prohibits *rescission*, Navigant leaps to the wholly unfounded

conclusion that Varughese's counterclaim for fraudulent inducement – which seeks

monetary damages only, *not* rescission (*see* Amended Counterclaims ¶¶ 193-195) – is

likewise barred as a matter of law.  (*See* Mem. at  6 ("Varughese has pled himself out of

---

[2]  As Navigant concedes (Navigant's Memorandum of Law In Support of Motion to Dismiss ("Mem.") at 6), in order to state a claim for fraudulent inducement in New York, "a plaintiff must show that that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir. 1996) (citations and internal quotations omitted).  Varughese sufficiently pleaded each of these elements.

5

court because he admittedly ratified and affirmed his employment agreements with Navigant and cannot now claim that he was induced into accepting the agreements' terms")).

Navigant's assertion that ratification of a contract bars a fraudulent inducement claim for monetary damages has no support in the law. The only legal authority that Navigant advances in support of this novel theory stands for the quite different, far more limited, proposition that a party may not *avoid* or *rescind* a contract based on fraudulent inducement if that party has ratified the contract. (*See* Mem. at 7 (quoting *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 850 F. Supp. 1199, 1212 (S.D.N.Y. 1994) ("Where a party engages in acts inconsistent with disaffirmance, such as acceptance of benefits under the contract . . . he will *lose the right to rescind*.") (emphasis added)), and *Sotheby's Fin. Servs., Inc. v. Baran*, No. 00 Civ. 7897 (BSJ), 2003 WL 21756126, at *6  (S.D.N.Y. July 29, 2003) ("party who re-affirms his contractual obligations in a subsequent written agreement is precluded from *asserting defenses* to those obligations under that agreement," including affirmative defense of fraudulent inducement seeking rescission) (emphasis added))). But that legal principle could affect, at most, Varughese's request for rescission in his Fourth Affirmative Defense – which is plainly not the subject of Navigant's motion to dismiss. It has no bearing on Varughese's counterclaim for fraudulent inducement because, as explained, Varughese seeks monetary damages in that counterclaim, and does not seek to avoid or rescind his employment agreements.[3]

---

[3]  Thus, Varughese does not address – but in no way concedes – Navigant's argument that he did, in fact, ratify his employment agreement because, as explained, any such ratification is legally irrelevant to the question whether Varughese is entitled to pursue a fraudulent inducement claim seeking monetary damages.

To the contrary, the law is clear that where a party seeks monetary damages arising from a fraudulent inducement of a contract, as Varughese does here, that party has the option to rescind the contract, or to affirm it and proceed on a damages action for fraud. *See Big Apple Car, Inc. v. City of New York*, 204 A.D.2d 109, 110-11, 611 N.Y.S.2d 533, 534 (1st Dep't 1994) ("[I]t is well settled that a defrauded party to a contract may elect to either disaffirm the contract by a prompt rescission or stand on the contract and thereafter maintain an action at law for damages attributable to the fraud."); *Clearview Concrete Products Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d 461, 466-67, 453 N.Y.S.2d 750, 754 (2d Dep't 1982) (stating that "common-law fraud action proceeds upon affirmation of the contract").[4]

Accordingly, numerous cases *expressly* reject the broader proposition, urged by Navigant here, that a purported ratification of a contract bars a fraudulent inducement claim for damages. Thus, in *Hangzhou Silk Imp. & Exp. Corp. v. P.C.B. Int'l Indus., Inc.*, No. 00 Civ. 6344 (RLC), 2002 WL 2031591, at *4 (S.D.N.Y. Sept. 5, 2002) – a decision that Navigant itself cites in its brief (Mem. at 6) – this Court emphatically rejected that very argument. Just like Navigant here, the plaintiff in *Hangzhou* argued that the defendant forfeited its right to bring a counterclaim for fraudulent inducement because it had allegedly ratified the agreement. *Id.* The Court acknowledged that such ratification would act as a bar "to attempts by the defrauded party to rescind the

---

[4] Because rescission and fraud damages are inconsistent legal theories, Varughese concedes that he cannot simultaneously prevail at trial upon his Fourth Affirmative Defense *and* recover on his counterclaim for money damages based on fraudulent inducement. *See Clearview Concrete*, 88 A.D.2d at 466-67, 453 N.Y.S.2d at 754 (party may not affirm the contract and sue for fraud damages and, at the same, rescind the contract); *Vitale v. Coyne Realty, Inc.*, 66 A.D.2d 562, 414 N.Y.S.2d 388, 393 (4th Dep't 1979) (same). But Varughese is fully permitted to advance inconsistent theories of recovery at the pleading stage. *See Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 768 F. Supp. 115, 117 (S.D.N.Y. 1991) ("Under New York law, fraud and rescission are separate causes of action, which may be pleaded in the alternative even though legally inconsistent."); Fed. R. Civ. P. 8(e)(2).

contract." *Id.* But it went on to expressly hold that, "while a party cannot rescind a contract under these circumstances, *it may still maintain a separate action for damages arising from the fraud.*") (emphasis added); *id.* ("In short, ratification does not preempt a claim for damages arising from the fraud."); *Petrello v. White*, 412 F.Supp.2d 215, 227 (E.D.N.Y. 2006) (despite ratification, party "would be entitled to damages arising from fraud if he could prove that such fraud in the inducement occurred and that he was damaged thereby"); *see also Big Apple Car*, 204 A.D.2d at 109, 611 N.Y.S.2d at 534 (same); *Clearview Concrete*, 88 A.D.2d at 466-67, 453 N.Y.S.2d at 754 ("Affirmance does not of itself, however, either waive recovery of fraud damages or deprive the victimized party of the ability to achieve compensation for the aftermath of the fraud.").

Finally, Navigant's theory that an employee who accepts compensation from an employer is forever barred from pursuing a fraudulent inducement claim for damages is flatly contradicted by the numerous cases permitting employees to bring precisely such claims, often after long periods of compensated employment. *See, e.g., Stewart v. Jackson & Nash*, 976 F.2d 86, 88-90 (2d Cir. 1992) (permitting fraud claim by environmental lawyer who was fraudulently inducted to join a law firm based on false promise that firm was establishing an environmental law department, worked at the law firm for two years, and was subsequently discharged); *Hyman v. IBM Corp.*, No. 98 Civ. 1371 (JSM), 2000 WL 1538161, at *1-*4 (S.D.N.Y. Oct. 17, 2000) (same based on false promises of secure job employment after approximately two years of employment, and noting that numerous  courts have allowed fraudulent inducement claims in those

circumstances).[5]  If Navigant's theory were correct, none of these employees should have been permitted to pursue a claim for fraudulent inducement because all of them allegedly would have "forfeited" the right to such a claim simply by accepting compensation from their former employer.  The case law emphatically rejects any such theory.

Navigant's flat misstatement of the governing law is either purposefully misleading or shockingly negligent.  In either case, it cannot possibly support dismissal of Varughese's counterclaim for fraudulent inducement.

## II.    Varughese Has Stated a Valid Claim For Breach of Contract

Navigant also has moved to dismiss Varughese's Second Counterclaim for breach of Contract based on Navigant's oral promises to pay him an annual compensation of at least 20% of the net revenue generated by the GFI subpractice.  As explained below, Navigant's arguments in support of dismissal of this counterclaim are equally unavailing, and its motion to dismiss therefore should be denied.

### a.    Varughese's Oral Contract Claim Is Not Foreclosed By Navigant's Reservation of Discretion in the Offer Letter

Navigant first argues that Varughese's breach of contract counterclaim fails because Navigant's Offer Letter purportedly gave Navigant full discretion to "adjust Varughese's compensation in accordance with a number of factors."  (Mem. at 10).  Navigant's support for this assertion is twofold: (1) a clause in the Offer Letter that pertains on its face only to Navigant's Variable Incentive Compensation Program, and states that payment under that program "would be contingent" on various specified

---

[5]  *See also Lam v. American Express Co.*, 265 F. Supp. 2d 225, 227-36 (S.D.N.Y. 2003) (employee could pursue fraudulent inducement claim based on false compensation promises after being employed at company, and accepting compensation, for over one and a half years); *Smalley v. Dreyfus Corp.*, 40 A.D.3d 99, 100-05, 832 N.Y.S.2d 157, 158-62 (1st Dep't 2007) (investment portfolio managers could pursue fraudulent inducement claim based on false promises relating to planned merger after compensated employment of several years).

factors  (*see* Offer Letter, attached as Ex. 1 to Affirmation of Rebecca R. Hanson, filed on

8/22/07 with Navigant's motion to dismiss); and (2) a statement in the Offer Letter that

Navigant "reserve[ed] the right to periodically review and adjust each of its compensation

and benefit programs it offers to you in its sole discretion."  (*Id*.).  According to

Navigant, these provisions allegedly make clear that any oral promise that it made to

Varughese to pay him a total compensation equal to 20% of the net revenue generated by

the GFI subpractice must be considered a promise that Navigant had full discretion to

change – in other words, no promise at all.

Navigant's argument fails because the contingency language in the Offer Letter

expressly applies only to the Variable Incentive Compensation Program, and the

discretionary language in the Offer Letter relates only to Navigant compensation and

benefit "programs" – *i.e.,*  the formal "programs" (*e.g.,* "Variable Incentive

Compensation Program," "Group Insurance Program," "Employee Stock Purchase Plan,"

"Base Salary") set forth in the Offer Letter.  But the oral promise to Varughese was an

individual promise that was not part of any formalized, company-wide "program."

Varughese expressly alleged that Navigant promised "that he would receive total

compensation of 20% of the net revenue generated by the GFI subpractice" and that if

that figure "for a given year exceeded Varughese's base salary and any other

compensation that might be paid by Navigant, Navigant would make up the difference to

ensure that his total compensation package equaled 20% of the net revenue generated by

the GFI subpractice."  (Amended Counterclaims ¶ 147).  Thus, the "contingent" nature of

Navigant's Variable Incentive Compensation program, or Navigant's reservation of rights

to adjust "programs," have nothing to do with, and plainly do not control, Navigant's

separate promise to compensate Varughese in an amount equal to 20% of the net revenue generated by the GFI subpractice, and to do so on a non-contingent, guaranteed basis.

In short, because the oral promise to pay Varughese total compensation equal to 20% of the GFI subpractice is concededly not a part of the Offer Letter, there is no basis for subjecting that promise – which Varughese alleges to be non-discretionary – to the discretionary restrictions (governing *different* compensation promises) that are set forth in the Offer Letter.

**b.      The Offer Letter Is Not A Fully Integrated Agreement Barring Parol Evidence**

Navigant next argues that the parol evidence rule bars Varughese from pursuing his breach of contract counterclaim because one of the many written employment agreements – the Stock Award Agreement, at ¶ 13 (Attached as Ex. D to Complaint) – contains an integration clause.  (*See* Mem. at 11-12).  This argument cannot succeed because (i) the integration clause on which Navigant attempts to rely applies only to the agreement in which it appears, and (ii) Navigant has failed to meet its burden of demonstrating that the Offer Letter is a fully integrated document barring parol evidence.

*i.      The Stock Award Agreement's Integration Clause Does Not Apply To The Offer Letter*

Navigant concedes that the Offer Letter – which it treats as the primary document setting forth the terms of Varughese's compensation package – does *not* contain an integration clause.  (Mem. at 11-12 & n.5).  Instead, Navigant argues that, because the Offer Letter references the Stock Award Agreement, the Stock Award Agreement and the Offer Letter – and indeed every written agreement listed in the Offer Letter – should be treated as one "singular" agreement.  (*Id.* at 11).  As such, Navigant claims that the

integration clause in the Stock Award Agreement somehow governs the Offer Letter as well.  (*Id.* at 12 n.5 (claiming that "the fact that there is no separate integration clause in the June 2005 offer letter is of no moment as the documents are construed together and the integration provision applies to the employment agreements in toto")).[6]

Navigant's integration theory is belied by the plain terms of the written agreements themselves.  The Stock Award Agreement governs only one specific aspect of Varughese's employment – namely, the grant to Varughese of restricted shares under Navigant's Long-Term Incentive Plan (the "Plan").  (*See* Stock Award Agreement at 1).  Moreover, the Stock Award Agreement's integration clause is expressly limited to that precise subject matter: "The Plan, this Agreement, and any documents expressly referred to herein constitute the entire agreement of the parties *with respect to the subject matter hereof* and any and all prior oral or written representations are merged into this Agreement."  (Stock Award Agreement ¶ 13 (emphasis added)).

Because the "subject matter" of the Stock Award Agreement is limited to Navigant's grant of restricted stock to Varughese under the Plan, the plain words of the integration clause do not apply to other aspects of Navigant's employment agreement with Varughese.  Thus, compensation (other than restricted stock under the Plan) – such as Navigant's oral compensation promise to Varughese – plainly is not part of the limited "subject matter" of the Stock Award Agreement.  Navigant's interpretation would rewrite

---

[6] Navigant also inexplicably, and without any support, relies on the "no oral modification" provision from the 2005 and 2007 Recovery Agreements to advance its already strained argument that the Offer Letter contains an integration clause.  (Mem. at 12).  But a provision requiring written modifications to a previously executed agreement is clearly not the same as an integration clause, which purports to exclude proof of *prior* oral agreements.  (*See e.g.,* Stock Award Agreement ¶ 13).  In any event, as Varughese explains below, *see infra* at 23-25, the "no oral modification" provisions in the Recovery Agreements, like the integration clause of the Stock Award Agreement, must be limited to the agreements in which they are included.

the integration clause in a way that would purportedly merge together *all agreements* between Varughese and Navigant on any subject matter whatsoever, and thus would render the limiting words of the integration clause – "with respect to the subject matter hereof" – a nullity.  That is reason alone to reject Navigant's interpretation.  *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.,* 485 F.3d 85, 102 (2d Cir. 2007) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect.") (citing *Muzak Corp. v. Hotel Taft Corp.,* 1 N.Y.2d 42, 46, 133 N.E.2d 688, 690, 150 N.Y.S.2d 171, 174 (N.Y. 1956)).[7]

Relatedly, Navigant's effort to treat these separate written agreements as one "singular" agreement must be rejected because it would render numerous provisions of these separate agreements entirely duplicative.  *Id.*  For example, Navigant neglects to mention that an integration clause also can be found in the Non-Solicitation Agreement. (*See* Non-Solicitation Agreement ¶ 21, Attached as Ex. A to Complaint) (providing that the Non-Solicitation Agreement is the "[e]ntire [a]greement[]" between the parties, and that it "supercedes [sic] all previous or contemporaneous agreements, written or oral, relating to the same subject matter.").  If these various writings comprise one "singular" agreement, as Navigant contends, it would have been entirely unnecessary – and indeed

---

[7]  Navigant's interpretation of the integration clause also should be rejected because it would produce absurd results.  For example, neither Navigant's Offer Letter, nor the Recovery Agreement (Attached as Ex. B to Complaint), is mentioned anywhere in the Stock Award Agreement.  But the integration clause of the Stock Award Agreement purports to treat as the "entire agreement of the parties" only the "Plan, [the Stock Award] Agreement, and any documents *expressly referred to herein.*" (*See* Stock Award Agreement ¶ 13 (emphasis added)).  In other words, on Navigant's interpretation, two of the key documents comprising Varughese's employment agreement with Navigant – documents on which Navigant heavily relies in this litigation, both in its Complaint and in its motion to dismiss – would be excluded from the parties' integrated "entire agreement" by virtue of the Stock Award Agreement's integration clause.  The parties obviously did not intend the integration clause in the Stock Award Agreement to produce such absurd results.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Am. Re-Ins. Co.,* 351 F.Supp.2d 201, 210 (S.D.N.Y. 2005) ("court 'must take the opportunity to prevent an absurd and unreasonable result-one that was never clearly intended by the parties'") (citation omitted).

nonsensical – for the parties to have executed two separate integration clauses, each of which would purport to make a *different* agreement the "entire agreement" between the parties.[8]  Thus, the only logical inference to be drawn from these entirely duplicative, mutually inconsistent, integration clauses is that each written agreement stands alone, and absent an express incorporation of another agreement, is governed by the specific provisions that it contains.[9]

In sum, the integration clauses of the Stock Award Agreement and the Non-Solicitation Agreement must be limited, as the plain words require, to the limited "subject matter" of those agreements.  Because the alleged oral compensation promise to Varughese is plainly not a part of the subject matter of either of those agreements, the integration clauses of those agreements do not apply to Varughese's oral contract claim. And because Navigant rests its parol evidence argument *exclusively* on a non-applicable integration clause (*see* Mem. at 12), this Court should conclude, without any further analysis, that the Offer Letter is not fully integrated, and that the introduction of parol

---

[8]  Similarly, Navigant's "singular agreement" argument cannot possibly account for why the parties would have drafted three separate "no oral modification" provisions (Non-Solicitation Agreement ¶ 21; Recovery Agreement, ¶8; Stock Award Agreement ¶ 16); three severability provisions (Non-Solicitation Agreement ¶ 22; Recovery Agreement ¶ 9; Stock Award Agreement ¶ 14); two "no waiver" provisions (Recovery Agreement ¶ 7; Stock Award Agreement ¶ 16); and three choice of law provisions (Non-Solicitation Agreement ¶ 26; Recovery Agreement ¶ 5; Stock Award Agreement ¶ 13).

[9]  Navigant's "singular agreement" theory also should be rejected because it is internally inconsistent. For example, although Navigant seeks to import the integration clause of the Stock Award Agreement to the Offer Letter, Navigant conveniently ignores additional provisions of the Stock Award Agreement, such as its Illinois choice of law provision, which is included in the very same paragraph as the integration clause. (*See* Stock Award Agreement ¶ 13).  If all of the separate written agreements are truly one integrated agreement, as Navigant contends, then Navigant's decision to move to dismiss under New York law would be inexplicable.  Navigant's selective treatment of the provisions of the Stock Award Agreement fatally undermines its integration theory, and provides further proof that that these separate agreements are, in fact, separate.

evidence therefore is permissible.[10]  *See E.G.L. Gem Lab Ltd. v. Gem Quality Institute, Inc.*, 90 F. Supp. 2d 277, 303 (S.D.N.Y. 2000) ("The burden of establishing that the writing is a complete integration of the agreement lies on the party seeking to exclude parol evidence."); *Adler & Shaykin v. Wachner*, 721 F. Supp. 472, 476 (S.D.N.Y. 1988) (same); *Morgan Stanley High Yield Secs., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 213-14 (S.D.N.Y. 2003) (parol evidence rule only applies where writing is "an integrated agreement" representing "entire understanding of the parties to the transaction").

ii.        *The Offer Letter And The Surrounding Circumstances Demonstrate That It Is Not A Fully Integrated Agreement*

As explained, this Court should not devote any additional attention to Navigant's integration theory.  But to the extent this Court decides to go further and determine whether, in the absence of an integration clause, the Offer Letter nonetheless could be considered a fully integrated agreement – despite Navigant's failure to advance *any* argument in support of that position – it should interpret the Offer Letter "by reading the writing in the light of surrounding circumstances, and by determining whether or not the other agreement was one which the parties would ordinarily be expected to embody in the writing."  *Wayland Inv. Fund, LLC v. Millennium Seacarriers, Inc.,* 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000) (citations omitted).  Factors that courts consider in making this determination include:

> whether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties is the sort of complex arrangement

---

[10]  Because Navigant's "singular agreement" theory is plainly invalid, the Offer Letter is clearly the relevant agreement for purposes of applying the parol evidence rule because Navigant itself treats that agreement as the primary document setting forth the basic terms of Varughese's compensation package. (Mem. at 4, 11)  The other written agreements, as explained, are specific agreements that, by their plain terms, do no relate to the subject matter of the alleged oral compensation promise.

15

which is customarily reduced to writing; whether the parties were represented by experienced counsel when they entered into the agreement; whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental; if the contract, which does not include the standard integration clause, nonetheless contains wording like "in consideration of the mutual promises herein contained, it is agreed and covenanted as follows," and ends by stating that "the foregoing correctly sets forth your understanding of our Agreement."

*Morgan Stanley*, 269 F. Supp. 2d at 212-14; *Point Developers, Inc. v. F.D.I.C.*, 921 F.

Supp. 1014, 1019-20 (E.D.N.Y. 1996) (discussing factors). These factors are "highly

fact-dependent" and thus, at the pleading stage, this "Court must view the facts in the

light most favorable" to Varughese. *Arias-Zeballos v. Tan*, No. 06 Civ. 1268 (GEL),

2006 WL 3075528, at *8 (S.D.N.Y. Oct. 26, 2006).

Here, the extremely limited analysis that can be undertaken without discovery

amply supports the conclusion that the Offer Letter is not a fully integrated agreement.

*First,* the absence of any integration clause in the Offer Letter – which Navigant

(presumably with the aid of counsel) prepared – is a significant factor indicating that the

Offer Letter was not intended to be a fully integrated agreement. *See Harden v. Warner*

*Amex Cable Communs. Inc.*, 642 F. Supp. 1080, 1094 (S.D.N.Y. 1986) (agreement not

fully integrated, in part, where it lacked integration clause, and was drafted by employer,

and ambiguities should be resolved in favor of employee); *E.G.L. Gem Lab*, 90 F. Supp.

2d at 303 (lack of integration clause in a written document drafted by an attorney is

evidence that the document is not fully integrated). Moreover, the presence of integration

clauses in the Non-Solicitation Agreement and the Stock Award Agreement confirm that

Navigant knew how to include an integration clause when it intended to draft a fully

integrated document, and that the absence of such a clause from the Offer Letter

demonstrates that Navigant did *not* intend the Offer Letter to be regarded as fully integrated.  *See In re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1976) (applying *expressio unius* canon to conclude that provision of certain rights in contract, but not others, indicates intent by sophisticated commercial actor to exclude such rights from contract); *Hudson v. IRS*, No. 03-CV-172, 2004 WL 1006266, at *8 (N.D.N.Y. Mar. 25, 2004) (applying canon to conclude that lack of exclusionary clause in one part of contract was intentional in light of presence of such a clause in other parts of the agreement).

*Second*, Navigant concedes that Varughese's employment agreement consists of a number of agreements – only some of which are referenced in the Offer Letter, and none of which is expressly incorporated into it.  For that reason,  the parol evidence rule should not bar evidence demonstrating that the relationship was governed by one additional oral compensation promise.  *Compare Municipal Capital Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 392 (S.D.N.Y. 2002) (finding two separate documents to be one fully integrated agreement because one document expressly incorporated the other).  Indeed, it is difficult to see how the Offer Letter itself could be regarded as a fully integrated agreement representing the *entire* agreement between the parties without merging, and thus rendering null and void, these separate, non-incorporated written agreements – a conclusion that would prove fatal to Navigant's effort to *enforce* those agreements against Varughese in its Complaint.

*Third*, to the extent the "surrounding circumstances" can be gleaned from the allegations in the Complaint, those circumstances also support the conclusion that the Offer Letter is not a fully integrated agreement.  Although the Offer Letter does not refer to Navigant's oral compensation promise, that promise is not a "complex" promise that

ordinarily would require a written agreement.  *See Arias-Zeballos*, 2006 WL 3075528, at

*8; *E.G.L. Gem Lab*, 90 F. Supp. 2d at 303-04.[11]  Nor is that promise the sort of promise

that Navigant "customarily" would "reduce[] to writing." *Morgan Stanley*, 269 F. Supp.

2d at 214.  To the contrary, as Varughese alleged (*see* Amended Counterclaims ¶¶ 170-

72), Navigant has a custom and policy of making such compensation promises orally, and

not in writing, to further its effort to fraudulently induce potential candidates to join

Navigant.  *See Point Developers,* 921 F. Supp. at 1019 (finding agreement not fully

integrated in part because plaintiff alleged "past practice" of similar oral commitments).[12]

        Finally, it is relevant to the analysis that: (i) neither party contends that Varughese

was represented by counsel when he negotiated the Offer Letter, and he was in fact not

represented, *see Arias-Zeballos*, 2006 WL 3075528, at *8 (stressing importance of this

factor); *E.G.L. Gem Lab*, 90 F. Supp. 2d at 303-4 (same); (iii) the Offer Letter is not a

"specially drawn out and executed agreement," but rather a brief, three-page letter

containing what Navigant itself concedes is a partial memorialization of certain terms of

Varughese's employment relationship, *Arias-Zeballos*, 2006 WL 3075528, at *8; and (iii)

---

[11]  Navigant claims that the alleged oral agreement is necessarily complex since the "formula for net revenue and the parameters of how revenue was attributable to a practice group would have been spelled out in precise detail in a written document, so that the payment amounts due could be verified."  (Mem. at 10 n.4).  But Varughese does not allege a promise relating to the specific issues of *how* Navigant would calculate net revenue or how it would allocate revenue between practice groups.  Rather, Navigant's oral promise was simple and straightforward: whatever net revenue Navigant ultimately determined that the GFI subpractice generated in a given year, Varughese would be entitled to 20% of that amount.  (*See* Amended Counterclaims ¶ 147).

[12]  By customarily refusing to put such promises in writing, Navigant makes it possible to later deny that it ever made such promises, and to simply refuse to honor them.  (*See* Amended Answer ¶ 172 ("It was generally understood within Navigant that Navigant would make such promises solely to induce prospective hires to join Navigant, that Navigant never intended to fulfill these promises, and that it did not in fact do so.")).  Indeed, in this light, Navigant's assertion of the parol evidence rule to exclude any evidence of its oral compensation promises is less of a legal argument than it is the culmination of its fraudulent hiring practices.

there is no language in the Offer Letter that resembles an integration or merger clause, *id.*. S*ee generally Morgan Stanley*, 269 F.Supp.2d at 213-14 (discussing factors).

Applying these highly fact-dependent factors to this case, and construing the facts in the light most favorable to Varughese, Navigant cannot possibly demonstrate that the Offer Letter is a fully integrated agreement as a matter of law.  As such, Navigant's motion to dismiss the counterclaim on the pleadings should be denied.  *See Wayland Inv. Fund*, 111 F. Supp. 2d at 454 (under New York law, contract is an integrated agreement as a matter of law only where it appears to be fully integrated "on its face"); *Arias-Zeballos*, 2006 WL 3075528, at *8 (denying parol evidence argument at pleading stage given "highly fact-dependent" nature of inquiry where there is no integration clause); *Salzmann v. Prudential Securities, Inc.*, No. 91 Civ. 4253 (KTD), 1994 WL 191855, at *8 n.6 (S.D.N.Y. May, 16 1994) (noting that it would be "impossible" for court to determine whether parol evidence rule applied at pleading stage where there was no integration clause and thus court would be required to "partake in a factual analysis of the contract to determine whether the agreement is fully integrated").[13]

c.    **Navigant's Oral Compensation Promise To Pay Varughese 20% of The Net Revenue Does Not Contradict Or Vary The Written Agreements**

Navigant next argues that, even if the Offer Letter is not a fully integrated agreement, the parol evidence rule nonetheless prevents Varughese from proving the existence of Navigant's oral compensation promise because that promise allegedly

---

[13]  *Compare Adler & Shaykin*, 721 F. Supp. at 477-78 (concluding on motion for summary judgment that writing was fully integrated after examining "both the document itself and the circumstances surrounding it," including deposition testimony relating to negotiation of contract and relationship between the parties); *Wilson-Gray v. Jay Feinberg, Ltd.*, No. 90 Civ. 0001 (MBM), 1990 WL 209635, at *1, *3 (S.D.N.Y. Dec. 17, 1990) (holding on summary judgment that written employment agreement "comprises the sum of the parties' agreement," but only after reviewing evidence, including deposition testimony and affidavit of plaintiff concerning negotiation of written contract).

contradicts the express terms of the Offer Letter and the other written agreements.  (*See* Mem. at 13-14 (citing cases)).  In support of this argument, Navigant contends that the alleged oral compensation promise "conflicts with the provisions of the written employment agreements Varughese executed with Navigant" because those agreements, "unlike the alleged oral promise, provide that Varughese would receive a base salary of $450,000 per year, that he would receive a one-time incentive bonus of $350,000, incentive compensation that would be based on a number of factors, restricted stock in the amount equal to $500,000 that would vest on a schedule laid out in the agreement, as well as other benefits."  (Mem. at 14).

But Navigant fails utterly to demonstrate that the Offer Letter, or any of the written agreements, in fact contradicts Navigant's oral compensation promise to Varughese.  In the cases on which Navigant relies, courts rejected extrinsic evidence under the parol evidence rule where the alleged promises contradicted a specific provision of the written agreement.[14]  Here, by contrast, Navigant fails even to identify a single provision of any written agreement that contradicts the alleged promise to pay Varughese a *total* compensation package equal to 20% of the net revenue generated by the GFI subpractice.  And in fact there is no inconsistency because the written agreements do not state or imply that the compensation promises they contain represent

---

[14]   S*ee Stanley v. Bray Terminals, Inc.*, 197 F.R.D. 224, 230 (N.D.N.Y. 2000) (alleged breach of contract based on obligation to deliver certain gasoline could not be proved under parol evidence rule where written agreements unambiguously permitted refusal of delivery in those circumstances); *Oxyn Telecomms., Inc. v. Onse Telecom*, No. 01 Civ. 1012(JSM), 2003 WL 22271224, at *4 (S.D.N.Y. Sept. 30, 2003) (parol evidence rule prohibited extrinsic evidence of promise to submit percentage determination to independent appraiser where written agreement expressly provided that that question was to be the subject of future negotiations between the parties); *Joseph Victori Wines v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352-53 (S.D.N.Y. 1996) (rejecting alleged oral agreement that would limit one party's right to terminate contract where written agreement contained no limitations on right of termination); *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 310 (S.D.N.Y. 2006) (rejecting alleged oral promise that "rewrote several key elements" of deal specifically outlined in written agreement).

the exclusive compensation that Varughese was entitled to receive from Navigant, nor do they purport to impose a ceiling on Varughese's total compensation. Thus, as Varughese alleged, the oral compensation promise was intended merely to supplement and complete – not to contradict or vary – the written compensation promises contained in the various written agreements. (*See* Amended Counterclaims ¶ 158).

Because the Offer Letter is not fully integrated, and because the oral compensation promise does not contradict any provision of the written agreements, that promise is not barred by the parol evidence rule. *See Joseph Victori Wines*, 933 F. Supp. at 352 ("If the writing is not integrated, of course, parol evidence of additional contract terms may be admitted to complete the agreement, so long as the additional terms do not contradict the written terms.").[15]

## III. Varughese Also States A Claim For Breach of Contract As Modified By Navigant's Post-Employment Oral Compensation Promises

Varughese also alleged in his amended counterclaim for breach of contract that, to the extent Navigant's pre-employment oral compensation promises are not enforceable, Navigant's post-employment oral compensation promises should be deemed a binding, oral modification of the compensation promises included in his Offer Letter. (*See* Amended Counterclaims ¶¶ 201-203).

Navigant fails meaningfully to address Varughese's separate claim for a binding oral modification of the Offer Letter. The only relevant reference in Navigant's brief to

---

[15] *See also US West Fin. Servs., Inc. v. Tollman*, 786 F. Supp. 333, 342 (S.D.N.Y. 1992) ("[I]f the writing is incomplete parol evidence may be admitted, not to contradict or vary, but to complete the entire agreement *of which the writing was only a part.*") (emphasis added) (citations and internal quotations omitted); *SR Int'l Bus. Ins. Co. v. World Trade Center Properties, LLC*, 222 F. Supp. 2d 385, 391-93 (S.D.N.Y. 2002) (holding that, where written agreement was not fully integrated, it was "appropriate" to consider "other communications that preceded" execution of written contract "to ascertain the complete terms" of the agreement, where prior communications did not contradict terms of written agreement).

these post-employment compensation promises is Navigant's assertion that "[t]he parole [sic] evidence rule bars alleged oral promises that contradict written agreements, *regardless of whether the alleged promise was made before or after the written agreement was executed*."  (Mem. at 13 (emphasis added)).

Once again, Navigant has the law exactly backwards.[16]  The law of New York is quite clear that "the parol evidence rule *has no application* to a subsequent agreement or subsequent oral modification of a written contract which is supported by new consideration."  *Backer v. Lewit*, 180 A.D.2d 134, 138, 584 N.Y.S.2d 480 (1st Dep't 1992) (emphasis added);[17] *Andreasen, Inc, v. Orly Int'l, Inc.*, No. 88 Civ. 3529 (KMW),1990 WL 104020, at *7 (S.D.N.Y. July 17, 1990) (citing cases); *Regent Partners, Inc. v. Parr Dev. Co.*, 960 F. Supp. 607, 615 (E.D.N.Y. 1997); *see also Arias-Zeballos*, 2006 WL 3075528, at *8 n.8 (parol evidence rule would be rendered inapplicable based on allegation in complaint that "defendant repeatedly promised plaintiff, *after* the written contract was signed, that defendant would pay her additional compensation in consideration for plaintiff's continued work").

Varughese acknowledges that such oral modifications may not be permitted in circumstances – not present here – in which the *relevant* written agreement expressly requires that all amendments or modifications to that agreement be in writing.  *See*

---

[16]  The sole authority Navigant cites in support of its manifestly erroneous statement of the law is *DDCLAB Ltd. v. E.I. Du Pont De Nemours & Co.*, No. 03 CV 3654GBD, 2005 WL 425495, at *4 (S.D.N.Y. Feb. 18, 2005)．  But *DDCLAB* in no way holds or suggest that the parol evidence rule applies to a claim of a subsequent oral modification.  Rather, the court rejected a claimed oral modification based on a provision barring oral modifications, *id.* at *4 – a distinct legal doctrine from the parol evidence rule that, as Varughese demonstrates below, cannot support dismissal of his breach of contract counterclaim.

[17]  Varughese alleged that he supplied consideration for the new oral promises by continuing to work as an at-will employee.  (*See* Amended Counterclaims ¶ 172 ).  Navigant does not contest, and thus concedes, this allegation, which the law amply supports.  *See, e.g., Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 338 (E.D.N.Y. 2003) (continued service by at-will employee is sufficient consideration to support employer's compensation promise); *Taylor v. Blaylock & Partners, L.P.*, 240 A.D.2d 289, 291, 659 N.Y.S.2d 257, 259 (1st Dep't 1997) (same).

*Tierney v. Capricorn Investors, L.P.,* 189 A.D.2d 629, 631, 592 N.Y.S.2d 700, 703 (1st Dep't 1993) ("When a written contract provides that it can only be changed by a signed writing, an oral modification of that agreement . . . is not enforceable."); N.Y. Gen. Obligations Law § 15-301(1) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.").  But for two reasons, § 15-301 cannot help Navigant in seeking to dismiss Varughese's oral modification counterclaim.

First, although Navigant refers in passing to a provision of the separate Recovery Agreement that purports to bar oral modifications or amendments (se*e* Mem. at 13 (discussing 2005 Recovery Agreement ¶ 8)), Navigant does so only as part of its argument that the Offer Letter should be read to include an *integration* clause.[18]  Thus, Navigant nowhere argues expressly that this provision of the Recovery Agreement bars proof of the post-employment promises, nor does Navigant cite or even discuss §15-301.  Thus, Navigant waived any effort to dismiss Varughese's oral modification claim on this ground.

Second, even if Navigant had argued that §15-301 applies because of the "no oral modification" provision of the Recovery Agreement, that argument would fail.  As demonstrated above, *see supra* at II(b), Navigant's "singular agreement" theory is fatally flawed, and cannot support Navigant's self-serving effort to cherry-pick clauses from the

---

[18]  Navigant also cites a similar provision in the 2007 Recovery Agreement (*see* 2007 Recovery Agreement ¶ 8, attached as Exh. C to Complaint) – a provision which, because first executed in 2007, could not possibly affect the validity of oral modifications alleged to have taken place in 2005 and 2006 (*See* Amended Counterclaims ¶ 201).

various agreements and pretend that those clauses somehow govern the Offer Letter too.

The 2005 Recovery Agreement is a separate agreement governing a particular bonus

payment that Navigant made to Varughese at the start of his employment. And the plain

terms of the Recovery Agreement's "no oral modification" provision make clear that that

provision relates exclusively to the terms and conditions of the Recovery Agreement, and

has no application to the separate employment agreements between the parties. (*See*

2005 Recovery Agreement, at p.4 (defining "Agreement" to mean *"[t]his* Incentive

Recovery Agreement") (emphasis added); *id.* & ¶ 8 (providing that, "[i]n consideration of

the mutual promises contained in *this Agreement*, the parties agree" to certain conditions,

including that *"[t]his Agreement* may be amended or modified only by written agreement

duly executed by Employee and NCI.") (emphasis added)).[19]

Thus, just like Navigant's unconvincing effort to inject the integration clause of

the Stock Award Agreement into the Offer Letter, any attempt by Navigant to smuggle

the Recovery Agreement's "no oral modification" clause into the Offer Letter also must

fail. Because the Offer Letter itself does not contain a "no oral modification" clause,

Varughese is entitled to prove his claim that Navigant modified the Offer Letter by

making post-employment promises that he would receive total compensation equal to

20% of the net revenue generated by the GFI subpractice.

---

[19]  Moreover, as explained above, the presence of the "no oral modification" clause in the Recovery Agreement, juxtaposed with the absence of any such clause in the Offer Letter, is powerful evidence that Navigant knew how to draft a "no oral modification" clause when it wanted one, and that its failure to include such a clause in the Offer Letter indicates an intent to permit oral modifications of the compensation promises contained in that agreement. Likewise, any effort by Navigant's to read the "no oral modification" clause of the Recovery Agreement as somehow applicable to *all* of the written employment agreements is belied by the presence of similar "no oral modification" clauses in some (but not all) of the other written agreements – for example, in the Non-Solicitation Agreement and the Stock Award Agreements. (*See* Non-Solicitation Agreement ¶ 21; Stock Award Agreement ¶ 16). If the "no oral modification" clause of the Recovery Agreement were read to bar oral modifications of all the agreements, then the "no oral modification" clauses in these separate agreements would be entirely duplicative and mere surplussage – an interpretation this Court must avoid. *See ABN Amro Verzekeringen BV,* 485 F.3d at 102.

**Conclusion**

For all of these reasons, Varughese respectfully requests that Navigant's motion

to dismiss the counterclaims should be denied in its entirety.

Date:   September 10, 2007
        New York, New York

**COHEN & GRESSER LLP**

By:_____/s/_____
Karen H. Bromberg (KB 2153)
Alexandra Wald (AW 0225)
Marc E. Isserles

100 Park Avenue, 23rd Floor
New York, NY 10017
Phone:  (212) 957-7600
Fax:  (212) 957-4514

*Attorneys for Defendant-Counterplaintiff*
*Jess Varughese*

25