Peter N. Wang (PW 9216)
Robert A. Scher (RS 2910)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016-1314
Telephone:     212.682.7474
Facsimile:     212.687.2329

and

Michael M. Conway (admitted *pro hac vice*)
Amy P. Purcell (admitted *pro hac vice*)
Rebecca R. Hanson (admitted *pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610
Telephone:     312.832.4351
Facsimile:     312.832.4700

*Attorneys for Plaintiff-Counterdefendant*
*Navigant Consulting, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAVIGANT CONSULTING, INC., a Delaware corporation, <br><br> Plaintiff-Counterdefendant, <br><br> v. <br><br> JESS VARUGHESE, an individual, <br><br> Defendant-Counterplaintiff. | Case No. 07 CIV 4854 (PKL) <br><br><br> **ANSWER TO THIRD, FOURTH, FIFTH AND SIXTH COUNTERCLAIMS** |

## PLAINTIFF-COUNTERDEFENDANT NAVIGANT CONSULTING, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO THIRD, FOURTH, FIFTH AND SIXTH COUNTERCLAIMS OF DEFENDANT COUNTERPLAINTIFF JESS VARUGHESE'S THIRD AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Plaintiff-Counterdefendant Navigant Consulting, Inc., by its attorneys,

respectfully answers the Third, Fourth, Fifth and Sixth Counterclaims of Jess Varughese's Third

Amended Answer, Affirmative Defenses, and Counterclaims, and states as follows:

# COUNTERCLAIMS
## (Summary of Counterclaims)

130.    These counterclaims arise out of Navigant's discrimination against Mr. Varughese, carried out in conjunction with its systemic fraudulent practice of soliciting individuals from other companies and inducing those individuals to join Navigant by making false and fraudulent promises that it never intends to keep. As discussed in more detail below, in keeping with this systemic practice, Navigant embarked on a carefully crafted campaign of false representations and aggressive solicitation techniques designed to lure Varughese from his then-place of employment and to exploit his extensive knowledge of the financial services industry to build a successful capital markets group at Navigant that never existed before.

**ANSWER:**    Navigant denies the allegations contained in paragraph 130 of the third amended counterclaim.

131.    Although Varughese successfully built a significant capital market presence at Navigant, Navigant breached its agreement to provide additional compensation to Varughese based on his division's performance. In addition, Navigant fraudulently reneged on its express promises – which it never intended to keep at the time they were made – to make Varughese head of Navigant's Financial Services Practice and to guarantee that Varughese would receive total compensation in an amount equal to 20% of the net revenue generated by the GFI subpractice. In so doing, Navigant fraudulently induced Varughese to leave his current employment and to accept a position at Navigant that he never would have accepted if Navigant had told him the truth about its lack of intent to compensate him or to promote him in accordance with its promises.

**ANSWER:**    Navigant denies the allegations contained in paragraph 131 of the third amended counterclaim.

132.    Moreover, on information and belief, Navigant's refusal to promote Varughese to Head of the Financial Services Practice was based in substantial part on the fact that Varughese is a person of Indian descent. Consistent with the composition of Navigant's senior management – which is almost all Caucasian – Navigant named Voelzke, a Caucasian woman, to be Head of the Financial Services practices instead of Varughese. And Navigant did so despite the fact that Varughese was fully qualified to be head of the Financial Services practice, far more qualified with the relevant skills and experience for that position than Voelzke, and was specifically promised that position at the time Navigant recruited him.

**ANSWER:**    Navigant admits that Voelzke was named Head of the Financial Services Practice, and denies the remaining allegations in paragraph 132 of the third amended counterclaim.

133.    Still worse, Navigant subsequently gave Varughese instead a far less senior and far more demeaning title, "co-leader" of the Financial Services Practice, together with Erik Linn – a Caucasian man. On information and belief, Navigant had never previously named

2

"co-leaders" for its individual practice groups. Rather, Navigant's longstanding policy and practice was to place each such practice under the leadership of a single individual, who – also by company policy and practice – was a Caucasian man or woman. Thus, though numerous Caucasian persons had been vested with sole leadership, Navigant departed from this usual practice in the case of Varughese, a person of Indian descent. Consistent with Navigant's pattern of staffing leadership positions with Caucasian persons, Navigant chose instead to treat a person of Indian descent differently, apparently motivated by its own discriminatory belief that a racial minority, such as Varughese, could not lead a practice group on his own, but instead needed the assistance and purported "co-leadership" of a Caucasian man, albeit one far less experienced and qualified than Varughese himself. Varughese's purported "promotion" to be a "co-leader" of the Financial Services Practice was in fact a discriminatory, adverse employment action that caused Varughese loss of professional stature and esteem, humiliation, and additional monetary and emotional harm.

**ANSWER:**    Navigant admits that Varughese and Linn were named co-leaders of the Financial Services Practice, and denies the remaining allegations in paragraph 133 of the third amended counterclaim.

134.    In April 2007, Varughese finally departed Navigant to practice in the field in which he has worked for his entire adult life and pursue leadership roles that had been foreclosed to him at Navigant due to discriminatory and fraudulent intent. Rather than own up to its breach of promises and fraud, Navigant instead commenced this action in willful retaliation for Varughese commencing his own legitimate business in the very sector in which he has devoted the last fifteen years of his professional life and in which Navigant would have no significant presence but for Varughese. Navigant's action is nothing more than a transparent attempt to shut down legitimate competitive conduct by a former employee. On the other hand, Varughese's counterclaims are a legitimate attempt by Varughese to redress the harm caused by Navigant's employment discrimination, breach of contract and fraud. By this action, Varughese also seeks punitive damages against Navigant, based on its willful and fraudulent conduct as alleged herein.

**ANSWER:**    Navigant admits that Varughese voluntarily resigned his employment from Navigant in April of 2007 and is currently practicing in the financial services field, and further states that Varughese lied to Navigant about his intentions, suggesting that he was leaving the consulting business and might simply grow his hair out and sail a boat. Navigant also admits that Varughese seeks punitive damages, but denies that Navigant has engaged in willful and fraudulent conduct, denies that Varughese is entitled to any relief or recovery whatsoever, including punitive damages, from Navigant, and denies the remaining allegations of paragraph 134 of the third amended counterclaim.

CHIC_1701667.3

## Jurisdiction and Venue

135.    This Court has jurisdiction over the counterclaims under 28 U.S.C. § 1332 because Navigant is incorporated in Delaware and has its principal place of business in Illinois, and Varughese is a citizen of the State of New York, and the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000. In addition, this Court has supplemental jurisdiction over these counterclaims under 28 U.S.C. § 1367. Venue is appropriate in this District for the same reasons alleged in the complaint.

**ANSWER:**    Navigant admits the allegations of paragraph 135 of the third amended counterclaim.

## Factual Allegations For Counterclaims

### Navigant Targets Varughese As A Valuable Recruit And Aggressively Solicits Him to Leave Bearing Point

136.    In 2005, Navigant decided to develop a new practice area in capital markets – an area in which Navigant had little or no prior expertise.

**ANSWER:**    Navigant admits that in 2005 Navigant decided to expand its capital markets practice group beyond the disputes area and denies that it had no prior expertise in capital markets.

137.    Navigant had previously hired a former employee of Bearing Point, Varughese's former employer. In the course of his employment at Navigant, this individual, on information and belief, identified Varughese as a valuable potential recruit at Bearing Point who could be instrumental in helping Navigant build a capital markets practice, and to assist in the development of its existing financial services practice.

**ANSWER:**    Navigant admits that it has hired individuals that were formerly employed by Bearing Point, but denies the other allegations contained in paragraph 137 of the third amended counterclaim.

138.    Varughese at the time had over fifteen years of experience and expertise in the capital markets and global financial services business in New York, and was already a well-known consulting professional in this segment of the market.

**ANSWER:**    Navigant lacks the knowledge to admit or deny these allegations, but states that Varughese represented that he had extensive experience and expertise in financial services.

CHIC_1701667.3

139.   In or about January 2005, Varughese received a series of unsolicited telephone calls from Navigant employees actively encouraging him to consider leaving his position at Bearing Point for a position at Navigant.

**ANSWER:**   Navigant admits that individuals from Navigant's recruiting department called

Varughese, as well as other potential recruits, in early 2005.

140.   From the representations that Navigant employees made to him at the time, it was clear to Varughese that Navigant had conducted extensive background research about him and his qualifications, and had targeted him as a valuable recruit in its effort to build a capital markets practice.

**ANSWER:**   Navigant admits that it conducted some background research on Varughese and

included Varughese on the list of potential recruits.

141.   Varughese resisted Navigant's initial attempts to recruit him and declined repeated overtures to meet with Navigant to discuss a position there.

**ANSWER:**   Navigant denies the allegations contained in paragraph 141 of the third amended

counterclaim.

## Navigant Induces Varughese To Join Navigant
## With False Promises It Never Intended To Keep

142.   In February 2005, Varughese finally agreed to have lunch with Doug Reichert, Navigant's Executive Managing Director, to discuss a possible position with Navigant.

**ANSWER:**   Navigant admits that Varughese had lunch with Reichert to discuss a possible

position with Navigant.

143.   At the lunch, Reichert told Varughese that Navigant was extremely interested in having Varughese join Navigant, and that Navigant was prepared to do everything it could to make that possible.

**ANSWER:**   Navigant denies the allegations contained in paragraph 143 of the third amended

counterclaim.

144.   In mid-February 2005, Varughese agreed to have a breakfast meeting in New York with Julie Howard ("Howard"), Navigant's Chief Operating Officer, to discuss the new position. Howard flew to New York for the sole purpose of meeting with Varughese and persuading him to join Navigant.

CHIC_1701667.3

**ANSWER:**    Navigant admits that Howard had a breakfast meeting with Varughese in New

York in early 2005 to discuss possible employment with Navigant, but denies that Howard flew

to New York for the sole purpose of meeting with Varughese.

145.    At that meeting, Varughese explained that he had some questions about the
position that Navigant envisioned for him – in particular, Varughese was not sure who within
Navigant was hiring him, and what precisely his role would be within Navigant.

**ANSWER:**    Navigant admits that Varughese wanted to discuss his role within Navigant and

who would act as his direct supervisor.

146.    Howard told Varughese that she was hiring him, that Varughese would report
directly to Howard, and that Howard intended to make Varughese the head of Navigant's
Financial Services Practice, which she explained was going to be defined to become a distinct
practice group within Navigant.

**ANSWER:**    Navigant admits that Howard may have explained that Navigant was going to

restructure its practices, and denies the remaining allegations in paragraph 146 of the third

amended counterclaim.

147.    At the time of the breakfast, Navigant's financial services practice was a part of
its Financial Insurance & Claims Services ("FICS") Practice.  Howard told Varughese that the
FICS Practice was shortly going to be separated into two separate practice groups, one of which
would be a new practice group, called the Financial Services Practice, devoted exclusively to
financial services.  Howard told Varughese that the Financial Services Practice would be
established in approximately three months, and that Varughese would be head of the Financial
Services Practice from its inception.

**ANSWER:**    Navigant admits that its financial services practice was a part of its Financial

Insurance & Claims Services Practice at the time of the breakfast meeting, and that Howard

would have told Varughese about the upcoming restructuring.  Navigant denies that Howard told

Varughese that he would be head of the Financial Services Practice from its inception.

148.    Though he had not otherwise planned to leave Bearing Point, these
representations by Howard and Reichert about the position Varughese would have at Navigant
caused Varughese to consider accepting employment with Navigant.

CHIC_1701667.3

**ANSWER:**    Navigant denies that Howard and Reichert made the representations alleged above, and lacks knowledge or information concerning Varughese's thoughts and intentions, and therefore denies the remaining allegations of paragraph 148 of the third amended counterclaim.

149.    In or about late May 2005, Reichert and Varughese met to negotiate further terms of Varughese's potential employment with Navigant.    Reichert told Varughese that he would receive total compensation of 20% of the net revenue generated by the GFI subpractice under his direction.    Reichert explicitly represented to Varughese that if 20% of the net revenue generated by the GFI subpractice for a given year exceeded Varughese's base salary and any other compensation that might be paid by Navigant, Navigant would make up the difference to ensure that his total compensation package equaled 20% of the net revenue generated by the GFI subpractice.

**ANSWER:**    Navigant admits that Reichert and Varughese had later conversations to discuss Varughese's potential employment with Navigant, and denies the remaining allegations of paragraph 149 of the third amended counterclaim.

150.    In late June, Reichert called Varughese and asked him what it would take to finalize the deal and get Varughese to join Navigant.    Varughese told Reichert that he needed another confirmation directly from Howard that he would be made head of the Financial Services Practice as previously represented.    Reichert arranged for Varughese and Howard to speak directly for the express purpose of confirming Navigant's promise that Varughese would head the Financial Services Practice.    During that phone call, Varughese explained to Howard that he would not leave his position at Bearing Point and accept Navigant's offer of employment unless he received assurances that, as Howard previously had promised, the Financial Services Practice was going to be established as a separate practice group within a few months, and that Varughese would be made the head of that practice at its inception.

**ANSWER:**    Navigant admits that Reichert and Varughese discussed Varughese's potential employment with Navigant during June of 2005, and denies the remaining allegations of paragraph 150 of the third amended counterclaim.

151.    Howard expressly confirmed to Varughese that the Financial Services Practice would be split off from FICS in a few months, and that Varughese would be made head of the Financial Services Practice at that time.

**ANSWER:**    Navigant denies the allegations contained in paragraph 151 of the third amended counterclaim.

152.    Based on Navigant's practices at the company and statements that were made to Varughese at the time of his resignation, it is apparent that Navigant never intended to meet its compensation promises. It was also clear from Navigant's actions as set forth in more detail below – namely, its decision to make Voelzke the head of the Financial Services Practice instead of Varughese, despite his superior qualifications – that Navigant also never intended to make Varughese the head of the Financial Services Practice.

**ANSWER:**    Navigant denies the allegations contained in paragraph 152 of the third amended

counterclaim and denies that it made the promises alleged in paragraphs 146-151.

153.    Navigant falsely promised Varughese that he would be the head of the Financial Services Practice, and that he would receive total compensation equal to 20% of the net revenue generated by the GFI subpractice, in order to fraudulently induce him to leave his position with Bearing Point and to join Navigant.

**ANSWER:**    Navigant denies the allegations contained in paragraph 153 of the third amended

counterclaim.

154.    Upon information and belief, Navigant makes it a practice to solicit and recruit high-level consultants, such as Varughese, by making false promises that it never intends to keep.

**ANSWER:**    Navigant denies the allegations contained in paragraph 154 of the third amended

counterclaim.

### Varughese Accepts Navigant's Offer of Employment

155.    On June 29, 2005, Navigant sent Varughese a letter addressing certain employment terms, including some aspects of his compensation such as his base salary and eligibility to participate in Navigant's discretionary bonus program.

**ANSWER:**    Navigant denies that Navigant's June 29, 2005 offer of employment contained

just "certain" employment terms or "aspects" of Varughese's compensation package, but rather

Navigant admits that its offer of employment included all aspects of Varughese's compensation

package, which he accepted.

156.    The June 29 letter did not contain any integration clause reciting that it represented the entire agreement between the parties with respect to Varughese's compensation, nor did it bar any oral modification.

8

**ANSWER:**   Navigant admits that the employment letter by itself did not contain an integration clause or language barring oral modification, but states that the employment agreement reflected the entirety of the employment terms between Varughese and Navigant.   The remainder of paragraph 156 contains a legal conclusion for which no answer is required.

157.   Varughese also received two other documents, the Non-Solicitation Agreement and the Recovery Agreement.

**ANSWER:**   Navigant admits the allegations in paragraph 157 of the third amended counterclaim.

158.   On July 15, 2005, Varughese signed the June 29 letter, and in addition signed the Non-Solicitation Agreement and the Recovery Agreement.

**ANSWER:**   Navigant admits the allegations in paragraph 158 of the third amended counterclaim.

159.   Subsequently, on September 13, 2005, Varughese agreed in writing to the terms of a Restricted Stock Award Agreement, or Long-Term Incentive Plan, in what was, upon information and belief, a Navigant form letter for that plan.

**ANSWER:**   Navigant admits the allegations in paragraph 159 of the third amended counterclaim.

160.   The complete terms to which Varughese agreed in accepting employment with Navigant included Navigant's promise that, after the calculation of compensation he might receive under the terms of the various writings he had signed, or any other compensation Navigant might pay, Navigant would make whatever payment was necessary to bring Varughese's total compensation to an amount equal to 20% of the net revenue generated by the GFI subpractice.

**ANSWER:**   Navigant denies the allegations in paragraph 160 of the third amended counterclaim.

161.   Both parties understood that Varughese's employment agreement included the additional term, to which the parties orally agreed, that Varughese would receive total compensation in an amount equal to 20% of net revenue generated by the GFI subpractice.

**ANSWER:**    Navigant denies the allegations in paragraph 161 of the third amended counterclaim.

## Varughese Brings His Substantial Expertise and Experience to Navigant And Creates A Successful Capital Markets Practice

162.    Varughese began employment at Navigant on or about August 31, 2005.

**ANSWER:**    Navigant admits the allegations in paragraph 162 of the third amended counterclaim.

163.    As Navigant had hoped when it recruited him, Varughese brought with him comprehensive knowledge and expertise in the capital markets area, including an understanding of pricing and typical contractual arrangements, client needs, and marketing strategies; prospective clients, and subcontractors; and a strategic vision for creating a successful financial services practice targeted at capital markets and investment management clients.

**ANSWER:**    Navigant admits that Varughese contributed to Navigant's capital markets practice, but denies the remaining characterizations of his efforts contained in paragraph 163 of the third amended counterclaim.

164.    Before Varughese joined Navigant, Navigant did not possess any of this expertise or experience in the capital markets area.

**ANSWER:**    Navigant denies the allegations in paragraph 164 of the third amended counterclaim.

165.    In 2006, Varughese exceeded all expected revenue goals for the GFI subpractice. Under Varughese's leadership, the GFI subpractice significantly exceeded its goals for the period of the 2007 through the end of April.

**ANSWER:**    Navigant admits that the GFI subpractice exceeded revenue goals, but denies any characterization of Varughese's efforts contained in paragraph 165 of the third amended counterclaim.

166.    Varughese's experience and expertise were thus indispensable to Navigant's ability to develop and create a successful capital markets practice.

10

**ANSWER:**    Navigant admits that Varughese contributed to Navigant's capital markets practice, but denies any characterization of his efforts contained in paragraph 166 of the third amended counterclaim and denies that he was indispensable.

### Navigant Reaffirms Its Promise To Pay Varughese
### 20% of Net Revenue, And Never Fulfills That Promise

167.    Shortly after Varughese began employment with Navigant in the Fall of 2005, Navigant on two occasions reaffirmed and renewed its express promise to pay Varughese total compensation equal to 20% of the net revenue generated by the GFI subpractice. Navigant made another representation renewing and reaffirming this compensation promise to Varughese in early 2006.

**ANSWER:**    Navigant denies the allegations contained in paragraph 167 of the third amended counterclaim.

168.    Navigant, through Doug Reichert, made these representations to Varughese in the context of Navigant's efforts to recruit new candidates. Navigant reaffirmed the oral compensation promise it had made to Varughese as part of its effort to fraudulently induce potential candidates to join Navigant on the same false terms – just as Navigant had made the exact same promises to Varughese at the time it recruited him.

**ANSWER:**    Navigant denies the allegations contained in paragraph 168 of the third amended counterclaim.

169.    Varughese assented to and accepted these renewed oral promises, which Navigant made subsequent to the time that Varughese began working at Navigant.

**ANSWER:**    Navigant denies the allegations contained in paragraph 169 of the third amended counterclaim.

170.    During the course of his employment with Navigant, Navigant failed to fulfill its promise that Varughese would receive a total compensation package equal to 20% of net revenue generated by the GFI subpractice.

**ANSWER:**    Navigant denies the allegations contained in paragraph 170 of the third amended counterclaim.

171.    Indeed, although Varughese's division generated approximately $7 - $8 million in net revenue in 2006, Varughese's total compensation for 2006 was approximately $815,000 – an

CHIC_1701667.3

amount far short of the 20% net revenue figure (approximately $1.4 - $1.6 million) that Navigant expressly promised to pay him.

**ANSWER:**    Navigant admits that the GFI division generated approximately $7 - $8 million in net revenue in 2006 and that Varughese's total compensation for 2006 was approximately $815,000, but denies the remaining allegations in paragraph 171 of the third amended counterclaim.

172.    Varughese later learned, from Voelzke and others within Navigant, that the false promises Navigant had made to him of a compensation packages equaling 20% of net revenue were standard operating procedure at Navigant when recruiting candidates, and that Navigant routinely did not honor such promises.

**ANSWER:**    Navigant denies the allegations contained in paragraph 172 of the third amended counterclaim.

173.    Indeed, as noted, on at least three occasions during his employment at Navigant, Varughese personally observed high-level Navigant employees making similar promises to prospective candidates of Navigant.

**ANSWER:**    Navigant lacks knowledge or information as to what Varughese allegedly observed, but denies that Navigant made promises to candidates which Navigant did not intend to honor and denies the remaining allegations in paragraph 173 of the third amended counterclaim.

174.    It was generally understood within Navigant that Navigant would make such promises solely to induce prospective hires to join Navigant, that Navigant never intended to fulfill these promises, and that it did not in fact do so. Navigant's failure to live up to these promises caused, and is causing, substantial and widespread discontent among Navigant's workforce.

**ANSWER:**    Navigant denies the allegations contained in paragraph 174 of the third amended counterclaim.

### In Furtherance Of Its Fraudulent Scheme,
### Navigant Fails to Make Varughese Head of Financial Services

175.    Notwithstanding Varughese's indispensable contribution to Navigant's efforts to develop and create a capital markets practice area, and its express and repeated promises that

12

Varughese would be named head of the Financial Services Practice once it was created, Navigant announced in or about November 2005 that Voelzke, a Caucasian woman, was to be named head of that practice.

**ANSWER:**    Navigant admits that it announced in or about November 2005 that Voelzke would head the Financial Services Practice, and denies the remaining allegations in paragraph 175 of the third amended counterclaim.

176.    The decision to appoint Voelzke as head of the Financial Services Practice had no sound business justification inasmuch as Voelzke did not possess the extensive experience and proven leadership that Varughese had demonstrated in the capital markets and financial services area for over fifteen years.  In fact, Voelzke's experience was primarily in the insurance and claims services sector.

**ANSWER:**    Navigant denies the allegations contained in paragraph 176 of the third amended counterclaim.

177.    In October 2005 – just one month after Varughese joined Navigant, and one month before Voelzke was made head of Financial Services – Voelzke inadvertently sent Varughese a company email containing an organizational chart of Navigant's financial services and insurance practices.  The chart listed Voelzke, not Varughese, as the head of the Financial Services Practice.

**ANSWER:**    Navigant lacks knowledge concerning the allegations in paragraph 177 of the third amended counterclaim and therefore denies same.  Navigant further states that it has performed a search of Voelzke's emails and has not been able to locate the alleged email.

178.    When Varughese asked Voelzke why the organizational chart listed her as the head of the Financial Services Practice, Voelzke falsely stated that that information was not accurate and had no significance.  Yet, despite this representation, one month later, Voelzke was in fact made head of this practice.

**ANSWER:**    Navigant admits that Voelzke was named head of the Financial Services Practice, denies the remaining allegations of paragraph 178 of the third amended counterclaim for lack of knowledge, and incorporates its answer to paragraph 177 of the third amended counterclaim herein.

CHIC_1701667.3

179.    Navigant obviously never intended to make Varughese the head of the Financial Services Practice, and had a secret and undisclosed intention to name Voelzke as head of that practice instead.

**ANSWER:**    Navigant denies the allegation that Navigant ever promised to make Varughese the head of the Financial Services Practice, and therefore denies the allegations in paragraph 179 of the third amended counterclaim on that basis.

180.    Navigant falsely told Varughese otherwise solely for the purpose of fraudulently inducing him to leave his position with Bearing Point and join Navigant.

**ANSWER:**    Navigant denies the allegations contained in paragraph 180 of the third amended counterclaim.

181.    On information and belief, Navigant has as a general matter a practice of making similar false and fraudulent representations to prospective employees in an effort to induce them to join Navigant and to leave valuable employment positions.

**ANSWER:**    Navigant denies the allegations contained in paragraph 181 of the third amended counterclaim.

182.    In addition, on information and belief, the decision to name Voelzke to the position of Head of the Financial Services Practice, instead of Varughese, was motivated by Navigant's discriminatory intent to keep the composition of its senior management Caucasian, and the ineligibility of a racial minority, such as Varughese, to be endowed with a sole, prominent position of authority at Navigant.

**ANSWER:**    Navigant denies the allegations contained in paragraph 182 of the third amended counterclaim.

**Navigant Names Varughese To The Novel And Demeaning Position
of "Co-Leader" of the Financial Services Practice**

183.    In January 2007, in yet another restructuring of Navigant's practice groups, Navigant promoted Voelzke to a different position within the company, leaving the position of Head of the Financial Services Practice – the position that Navigant falsely promised to Varughese in 2005 – once again vacant.

**ANSWER:**    Navigant admits that Voelzke was promoted to a different position within Navigant in or about January 2007, making the position of head of the Financial Services

14

Practice available, but denies the remaining allegations in paragraph 183 of the third amended counterclaim.

184.    Instead of attempting to rectify its prior, discriminatory refusal to name Varughese sole Head of the Financial Services Practice, Navigant instead added insult to injury and named Varughese to a novel title – one created apparently for racial minorities – "co-leader" of that practice.  Navigant named Erik Linn, a Caucasian man with substantially less experience than Varughese in the financial services arena and far less qualifications, as the other "co-leader" of the Financial Services Practice.

**ANSWER:**    Navigant admits that Varughese and Linn were named as co-leaders of the Financial Services Practice, but denies the remaining allegations in paragraph 184 of the third amended counterclaim.

185.    On information and belief, Navigant had never before named two individuals to be "co-leaders" of an individual practice group.  Rather, the established company policy was to name a single individual – on information and belief, always a Caucasian individual during the time of Varughese's employment – to lead each practice group.

**ANSWER:**    Navigant denies the allegations contained in paragraph 185 of the third amended counterclaim.

186.    Navigant's decision to name Varughese as "co-leader" of the Financial Services Practice represented a strategic ploy by Navigant to financially exploit Varughese's expertise while depriving him of the full status and authority which he had earned and deserved, and continuing its discrimination among senior management.

**ANSWER:**    Navigant denies the allegations contained in paragraph 186 of the third amended counterclaim.

187.    By giving Varughese an empty, shared change of title, rather than the genuine promotion to a senior leadership role that he had been promised, Navigant hoped to lull Varughese into staying at the company and continuing to devote efforts to Navigant's behalf.  At the same time, by twice denying Varughese the position of sole Head of the Financial Services Practice that it had originally promised him, and by ensuring that a Caucasian man be seen at the helm of the Financial Services Practice rather than permit that group to be led solely by a person of Indian descent, Navigant perpetuated its discriminatory practice of excluding racial minorities from the most senior management positions at the company.

15

**ANSWER:**    Navigant admits that it hoped that Varughese would stay with Navigant and continue to contribute to Navigant, but denies the remaining allegations in paragraph 187 of the third amended counterclaim.

188.    The novel position of "co-leader" of the Financial Services Practice was demeaning to Varughese in that it suggested to others, within Navigant and in the industry more generally, that Varughese was not capable or qualified to lead the Financial Services Practice by himself.   This was especially true in light of Navigant's settled and publicly known practice of having practice areas be led by a single person.   Given Varughese's qualifications and professional experience, the only inference to be drawn from Navigant's strained effort to avoid promoting him as promised is that Navigant's conduct was motivated by the fact that Varughese is a person of Indian descent and not, like the rest of Navigant's senior management (including persons promoted to the position of sole head of a practice group), a Caucasian man or woman.

**ANSWER:**    Navigant denies the allegations contained in paragraph 188 of the third amended counterclaim.

189.    Navigant recently admitted in a document provided to the Equal Employment Opportunity Commission that at the time of the creation of the Financial Services Practice, Varughese was "not even considered to be a serious candidate" to lead the Financial Services Practice.

**ANSWER:**    Navigant admits that in its response to the EEOC, it stated, in pertinent part as follows:

> Just one month into Complainant's employment with Navigant, Navigant reorganized a bit by separating the Financial Services Practice from a large practice group known as the Financial and Insurance Services group. As part of that change, Navigant appointed Sharon Siegel Voelzke to lead its Financial Services Practice. Ms. Siegel Voelzke had successfully served Navigant in high-level management roles since early 2000, and was deemed by Navigant to be the best person for the job due to approximately 20 years of overall experience, her demonstrated leadership skills and the consistently positive relationships that she developed with leaders and others throughout the Navigant organization during her tenure. In fact, as a brand new manager who had not yet proven himself in the Navigant organization, Complainant was not even considered to be a serious candidate for the position.

16

### FIRST COUNTERCLAIM
### (Fraudulent Inducement)

Navigant has moved to dismiss the First Counterclaim (paragraphs 190 through 205) pursuant to Federal Rule of Civil Procedure 12(b) and the matter is fully briefed and pending before the Court. Accordingly, no response is required by Navigant at this time, pending the Court's ruling on the Motion to Dismiss.

### SECOND COUNTERCLAIM
### (Breach of Contract)

Navigant has moved to dismiss the Second Counterclaim (paragraphs 206 through 215) pursuant to Federal Rule of Civil Procedure 12(b) and the matter is fully briefed and pending before the Court. Accordingly, no response is required by Navigant at this time, pending the Court's ruling on the Motion to Dismiss.

### THIRD COUNTERCLAIM
### (Employment Discrimination, New York State Human Rights Law,
### Executive Law §§ 290 et seq.)

216. Varughese repeats and realleges Paragraphs 1 through 215 above as if fully set forth herein.

**ANSWER:** Navigant repeats and realleges the allegations set forth in its Complaint in paragraphs 1 through 129, and its responses to paragraphs 130 through 189 above as if fully set forth herein, and does not respond to the allegations set forth in paragraphs 190 through 215 as those allegations are subject to a pending Motion to Dismiss.

217. Navigant is an employer within the meaning of the Human Rights Law § 292(5) in that it employs more than four individuals.

**ANSWER:** Navigant admits the allegations contained in paragraph 217 of the third amended counterclaim.

218. Navigant's discriminatory acts took place in New York and were directed against Varughese, a New York state resident.

17

**ANSWER:**    Navigant denies the allegations contained in paragraph 218 of the third amended counterclaim.

219.    Varughese is an individual of Indian descent, and is thus a member of a protected class under the Human Rights Law.

**ANSWER:**    Navigant admits that Varughese is a man of Indian descent, and states that the remaining allegations in paragraph 219 of the third amended counterclaim call for a legal conclusion for which no response is required.

220.    Navigant falsely told Varughese at the time it recruited him to join Navigant that he would be named the head of Navigant's Financial Services Practice shortly after the commencement of his employment in August 2005.

**ANSWER:**    Navigant denies the allegations contained in paragraph 220 of the third amended counterclaim.

221.    Although Navigant repeatedly told Varughese that he was amply qualified for the position of Head of the Financial Services Practice, which he was, and indeed promised him that he would be named to that position at the appropriate time, Navigant instead named Voelzke, a Caucasian woman, to that position in November 2005 even though Varughese had made it known at the time that he desired the position and applied for the position.

**ANSWER:**    Navigant admits that Voelzke was appointed to head the Financial Services Practice in October or November of 2005 and denies the allegations contained in paragraph 221 of the third amended counterclaim.

222.    Given Varughese's extensive experience and proven track record in the financial services area, and Voelzke's comparative lack of relevant experience, the decision to name Voelzke and not Varughese to be Head of the Financial Services Practice was motivated by Navigant's discriminatory intent to keep racial minorities from occupying senior management positions at the company.

**ANSWER:**    Navigant denies the allegations contained in paragraph 222 of the third amended counterclaim.

223.    On information and belief, during Varughese's tenure at Navigant, senior management positions at Navigant were occupied by Caucasian men or Caucasian women. Indeed, at the time of Navigant's discriminatory acts, there was not a single person of color who occupied a senior management position at the company. On information and belief, Navigant's

CHIC_1701667.3

current senior management is similarly devoid of any racial minorities, and is composed exclusively of Caucasian men and Caucasian women.

**ANSWER:**    Navigant denies that it engaged in any discriminatory acts, and states that as of March 2007, while Varughese was still employed by Navigant, persons of color held positions as practice group leaders and managing directors at Navigant.

224.    In violation of the Human Rights Law, Navigant discriminated against Varughese in the terms and conditions of his employment on the basis of his race by failing to promote him to be head of the Financial Services Practice in 2005, and by subsequently giving him in 2007 a novel and demeaning "co-leadership" position to share with a Caucasian man, thus suggesting to Navigant employees and to the industry that a person of Indian descent somehow is incapable of leading a Navigant practice group on his own.

**ANSWER:**    Navigant denies the allegations contained in paragraph 224 of the third amended counterclaim.

225.    Varughese has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of Navigant's discriminatory actions.

**ANSWER:**    Navigant denies the allegations contained in paragraph 225 of the third amended counterclaim.

## FOURTH COUNTERCLAIM
**(Employment Discrimination, New York City Human Rights Law,**
**N.Y.C. Admin. Code §§ 8-101 et seq.)**

226.    Varughese repeats and realleges Paragraphs 1 through 225 above as if fully set forth herein.

**ANSWER:**    Navigant repeats and realleges the allegations set forth in its Complaint in paragraphs 1 through 129, and its responses to paragraphs 130 through 189 and 216 through 225 above as if fully set forth herein and does not respond to the allegations set forth in paragraphs 190 through 215 as those allegations are subject to a pending Motion to Dismiss.

227.    Navigant is an employer within the meaning of the Administrative Code, § 8-102(5) in that it employs more than four individuals.

**ANSWER:**    Navigant admits the allegations contained in paragraph 227 of the third amended counterclaim.

228.    Navigant's discriminatory acts took place in New York City.

**ANSWER:**    Navigant denies the allegations contained in paragraph 228 of the third amended counterclaim.

229.    A copy of this Third Amended Answer and Counterclaims is being served upon the New York City Corporation Counsel and the Commission on Human Rights of the City of New York.

**ANSWER:**    Navigant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 229 of the third amended counterclaim.

230.    Varughese is a man of Indian descent, and is thus a member of a protected class under the Administrative Code.

**ANSWER:**    Navigant admits that Varughese is a man of Indian descent, and states that the remainder of the allegations contained in paragraph 230 of the third amended counterclaim call for a legal conclusion for which no response is required.

231.    Navigant falsely told Varughese at the time it recruited him to join Navigant that he would be named the head of Navigant's Financial Services practice shortly after the commencement of his employment in August 2005.

**ANSWER:**    Navigant denies the allegations contained in paragraph 231 of the third amended counterclaim.

232.    Although Navigant repeatedly told Varughese that he was amply qualified for the position of head of the Financial Services Practice, which he was, and indeed promised him that he would be named to that position at the appropriate time, Navigant instead named Voelzke, a Caucasian woman, to that position in November 2005 even though Varughese had made it known at the time that he desired the position and applied for the position.

CHIC_1701667.3

**ANSWER:**    Navigant admits that Voelzke was appointed to head the Financial Services Practice in October or November of 2005 and denies the allegations contained in paragraph 232 of the third amended counterclaim.

233.    Given Varughese's extensive experience and proven track record in the financial services area, and Voelzke's comparative lack of relevant experience, the decision to name Voelzke and not Varughese to be head of the Financial Services Practice was motivated in substantial part by Navigant's discriminatory intent to keep racial minorities from occupying senior management positions at the company.

**ANSWER:**    Navigant denies the allegations contained in paragraph 233 of the third amended counterclaim.

234.    On information and belief, senior management positions at Navigant are occupied by Caucasian men or women. Indeed, at the time of Navigant's discriminatory acts, there was not a single person of color who occupied a senior management position at the company. On information and belief, Navigant's current senior management is similarly devoid of any racial minorities, and is composed exclusively of Caucasian men or women.

**ANSWER:**    Navigant denies that it engaged in any discriminatory acts, and states that as of March 2007, while Varughese was still employed by Navigant, persons of color held positions as practice group leaders and managing directors at Navigant.

235.    In violation of the Administrative Code, Navigant discriminated against Varughese in the terms and conditions of his employment on the basis of his race by failing to promote him to be head of the Financial Services Practice in 2005, and by subsequently giving him in 2007 a novel and demeaning "co-leadership" position to share with a Caucasian man, thus suggesting to Navigant employees and to the industry that a person of Indian descent somehow is incapable of leading a Navigant practice group on his own.

**ANSWER:**    Navigant denies the allegations contained in paragraph 235 of the third amended counterclaim.

236.    In taking the above described discriminatory actions, defendant acted with malice and reckless indifference to Varughese's rights under the Administrative Code.

**ANSWER:**    Navigant denies the allegations contained in paragraph 236 of the third amended counterclaim.

CHIC_1701667.3

237.    Varughese has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of Navigant's discriminatory actions.

**ANSWER:**    Navigant denies the allegations contained in paragraph 237 of the third amended

counterclaim.

## FIFTH COUNTERCLAIM
### (Employment Discrimination, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. as amended by the Civil Rights Act of 1991, 42 USC § 1981a ("Title VII")

238.    Varughese repeats and realleges Paragraphs 1 through 237 above as if fully set forth herein.

**ANSWER:**    Navigant repeats and realleges the allegations set forth in its Complaint in

Paragraphs 1 through 129 and its responses to Paragraphs 130 through 180 and 216 through 237

as its answer to Paragraph 238 as if fully set forth herein and does not respond to the allegations

set forth in paragraphs 190 through 215 as those allegations are subject to a pending Motion to

Dismiss.

239.    Navigant is an employer within the meaning of Title VII, 42 U.S.C. § 2000e (b) in that it has fifteen or more employees.

**ANSWER:**    Navigant admits the allegations of Paragraph 239 of the third amended

counterclaim.

240.    On or about August 7, 2007, Varughese filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") complaining of the unlawful discriminatory acts alleged herein. On or about January 18, 2008 the EEOC issued to Varughese his notice of right to sue. (A copy of the Notice of Right to Sue is attached hereto as Exhibit A). Varughese has fully complied with the administrative prerequisites to the filing of these counterclaims.

**ANSWER:**    Navigant admits that Varughese filed a charge of discrimination with the EEOC

on or about August 7, 2007 and that the EEOC took no action on his charge.  Navigant admits

that the EEOC issued Varughese the Notice of Right to Sue attached as Exhibit A to the third

counterclaim.  Navigant denies the last sentence of this paragraph because Varughese has not

exhausted the administrative prerequisites for discrimination claims based on color.

241.    Navigant falsely told Varughese at the time it recruited him to join Navigant that he would be named the head of Navigant's Financial Services practice shortly after the commencement of his employment in August 2005.

**ANSWER:**    Navigant denies the allegations of Paragraph 241 of the third amended

counterclaim.

242.    Although Navigant repeatedly told Varughese that he was amply qualified for the position of head of the Financial Services Practice, which he was, and indeed promised him that he would be named to that position at the appropriate time, Navigant has since admitted that even at the time of his hiring, it never viewed Varughese as a serious candidate for that role.

**ANSWER:**    Navigant denies the allegations of Paragraph 242 of the third amended

counterclaim.

243.    Navigant instead named Voelzke, a Caucasian woman, to that position in November 2005 even though Varughese had made it known at the time that he desired the position and applied for the position.

**ANSWER:**    Navigant admits that, upon the reorganization, Voelzke, a Caucasian woman, to

the position of head of the Financial Services Practice and denies the remaining allegations of

Paragraph 243 of the third amended counterclaim.

244.    Given Varughese's extensive experience and proven track record in the financial services area, and Voelzke's comparative lack of relevant experience, the decision to name Voelzke and not Varughese to be head of the Financial Services Practice was motivated in substantial part by Navigant's discriminatory intent to keep racial minorities from occupying senior management positions at the company.

**ANSWER:**    Navigant denies the allegations of Paragraph 244 of the third amended

counterclaim.

245.    Further, Varughese was subsequently denied a promotion to sole group leader, and was made to share the position with a substantially more junior and less qualified Caucasian man.

CHIC_1701667.3

**ANSWER:**    Navigant denies the allegations of Paragraph 245, but admits that Varughese was promoted to the position of co-head of the Financial Services Practice.

246.    On information and belief, senior management positions at Navigant are occupied by Caucasian men or women. Indeed, at the time of Navigant's discriminatory acts, there was not a single person of color at a managing director, director or executive committee level within Navigant. On information and belief, Navigant's current senior management is similarly devoid of any racial minorities, and is composed exclusively of Caucasian men or women.

**ANSWER:**    Navigant denies that it engaged in any discriminatory acts, and states that as of March 2007, while Varughese was still employed by Navigant, persons of color held positions as practice group leaders and managing directors at Navigant.

247.    In violation of Title VII, Navigant discriminated against Varughese in the terms and conditions of his employment on the basis of his race, color and national origin by failing to promote him to be head of the Financial Services Practice in 2005, and by subsequently giving him in 2007 a novel and demeaning "co-leadership" position to share with a Caucasian man, thus suggesting to Navigant employees and to the industry that a person of Indian descent somehow is incapable of leading a Navigant practice group on his own.

**ANSWER:**    Navigant denies the allegations of Paragraph 247 of the third amended counterclaim.

248.    By the acts and practices described above, Navigant discriminated against Varughese in the terms and conditions of his employment on the basis of his race, color and national origin.

**ANSWER:**    Navigant denies the allegations of Paragraph 248 of the third amended counterclaim.

249.    In taking the above described discriminatory actions, Navigant acted with malice and reckless indifference to Varughese's rights under Title VII.

**ANSWER:**    Navigant denies the allegations of Paragraph 249 of the third amended counterclaim.

250.    Varughese has suffered and continues to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable injuries as a result of Navigant's discriminatory actions.

CHIC_1701667.3

**ANSWER:** Navigant denies the allegations of Paragraph 250 of the third amended counterclaim.

## SIXTH COUNTERCLAIM

### (Employment Discrimination, Civil Rights Act of 1866, 42 U.S.C. § 1981)

251.    Varughese repeats and realleges Paragraphs 1 through 250 above as if fully set forth herein.

**ANSWER:** Navigant repeats and realleges the allegations set forth in the complaint in Paragraphs 1 through 129 and its responses to Paragraphs 216-250 as its answer to Paragraph 251 as if fully set forth herein and does not respond to the allegations set forth in paragraphs 190 through 215 as those allegations are subject to a pending Motion to Dismiss.

252.    Navigant falsely told Varughese at the time it recruited him to join Navigant that he would be named the head of Navigant's Financial Services practice shortly after the commencement of his employment in August 2005.

**ANSWER:** Navigant denies the allegations of Paragraph 252 of the third amended counterclaim.

253.    Although Navigant repeatedly told Varughese that he was amply qualified for the position of head of the Financial Services Practice, which he was, and indeed promised him that he would be named to that position at the appropriate time, Navigant instead named Voelzke, a Caucasian woman, to that position in November 2005 even though Varughese had made it known at the time that he desired the position and applied for the position.

**ANSWER:** Navigant denies the allegations of Paragraph 253 of the third amended counterclaim.

254.    Given Varughese's extensive experience and proven track record in the financial services area, and Voelzke's comparative lack of relevant experience, the decision to name Voelzke and not Varughese to be head of the Financial Services Practice was motivated in substantial part by Navigant's discriminatory intent to keep racial minorities from occupying senior management positions at the company.

**ANSWER:** Navigant denies the allegations of Paragraph 254 of the third amended counterclaim.

CHIC_1701667.3

255. On information and belief, senior management positions at Navigant are occupied by Caucasian men or women. Indeed, at the time of Navigant's discriminatory acts, there was not a single person of color at a managing director, director or executive committee level within Navigant. On information and belief, Navigant's current senior management is similarly devoid of any racial minorities, and is composed exclusively of Caucasian men or women.

**ANSWER:** Navigant denies that it engaged in any discriminatory acts, and states that as of March 2007, while Varughese was still employed by Navigant, persons of color held positions as practice group leaders and managing directors at Navigant.

256. In violation of 42 U.S.C. § 1981, Navigant discriminated against Varughese in the terms and conditions of his employment on the basis of his race by failing to promote him to be head of the Financial Services Practice in 2005, and by subsequently giving him in 2007 a novel and demeaning "co-leadership" position to share with a Caucasian man, thus suggesting to Navigant employees and to the industry that a person of Indian descent somehow is incapable of leading a Navigant practice group on his own.

**ANSWER:** Navigant denies the allegations of Paragraph 256 of the third amended counterclaim.

257. By the acts and practices described above, Navigant discriminated against Varughese in the terms and conditions of his employment on the basis of his race.

**ANSWER:** Navigant denies the allegations of Paragraph 257 of the third amended counterclaim.

258. In taking the above described discriminatory actions, Navigant acted with malice and reckless indifference to Varughese's rights under the Civil Rights Act of 1866.

**ANSWER:** Navigant denies the allegations of Paragraph 258 of the third amended counterclaim.

259. Varughese has suffered and continues to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable injuries as a result of Navigant's discriminatory actions.

**ANSWER:** Navigant denies the allegations of Paragraph 259 of the third amended counterclaim.

CHIC_1701667.3

## AFFIRMATIVE DEFENSES

Further answering Counts III, IV, V and VI of Varughese's third amended counterclaim, and as independent affirmative defenses, Navigant states as follows:

### First Affirmative Defense

1.    Varughese cannot establish a prima facie case of discrimination because he cannot establish that he suffered an adverse employment action by Navigant.

### Second Affirmative Defense

2.    Varughese cannot establish a prima facie case of discrimination because no similarly situated person outside of the protected class was treated more favorably than Varughese.

### Third Affirmative Defense

3.    Varughese's discrimination claims fail because Navigant had legitimate, non-discriminatory business reasons for employment-related decisions challenged by Varughese.

### Fourth Affirmative Defense

4.    Varughese's discrimination claims are barred by the doctrines of estoppel, waiver, and laches.

### Fifth Affirmative Defense

5.    Varughese has failed to satisfy his duty to mitigate his damages.

### Sixth Affirmative Defense

6.    Navigant maintains appropriate policies to protect against discriminatory practices.

### Seventh Affirmative Defense

7.    Varughese's Fifth Counterclaim for alleged violations of Title VII of the Civil Rights Act of 1964 fails and must be dismissed, at least in part, due to Varughese's failure to exhaust the administrative prerequisites.

### Eighth Affirmative Defense

8.    Varughese's prayer for compensatory damages for alleged emotional harm, and his prayer for punitive damages, pursuant to his Fifth Counterclaim, must be limited by the damages caps applicable to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

CHIC_1701667.3

## PRAYER FOR RELIEF

**WHEREFORE**, Navigant respectfully prays that this Court enter judgment against Varughese and in favor of Navigant on Counts III, IV, V and VI of the third amended counterclaim, award Navigant its attorneys' fees and costs and grant such other and further relief in favor of Navigant as the Court deems just.

Dated:  April 24, 2008
Chicago, Illinois

Respectfully submitted,

Peter N. Wang (PW 9216)
Robert A. Scher (RS 2910)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016-1314
Telephone: 212.682.7474
Facsimile: 212.687.2329

and

Michael M. Conway (admitted *pro hac vice*)
Amy P. Purcell (admitted *pro hac vice*)
Rebecca R. Hanson (admitted *pro hac vice*)
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764
Telephone: 312.832.4500
Facsimile: 312.832.4700

*Attorneys for Plaintiff-Counterdefendant Navigant Consulting, Inc.*

28